# Hobbs Bros. Drilling Company v. Cooper et al.

(Decided November 11, 1930.)

A. T. PATRICK for appellants.

H. H. RAMEY, D. GLENN SUBLETT and J. B. ADAMSON for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The appellees, A. L. Cooper and D. G. Sublett, sued the appellants, L. B. Hobbs and Roy E. Hobbs, a partnership doing business as Hobbs Bros. Drilling Com-

pany, alleging that on or about October 1, 1923, they had procured for the defendants three certain oil leases, on account of which services and leases they were indebted to the plaintiffs a balance of $1,308, for which sum they asked judgment. It was averred that the original consideration was $1,500 and an agreement that the defendants would drill five wells and carry plaintiffs for one-eighth royalty, but thereafter they had agreed to waive the drilling of the wells and payment of royalty in consideration of the immediate payment of the balance of the money consideration; and that on January 29, 1924, they had accepted 1,200 feet of tubing of the value of $192 as a credit, and on that day the defendants had executed a writing evidencing their indebtedness of the balance of $1,308.

The defendants denied the allegations of the petition, including the execution of the writing referred to. They alleged that they had acquired of the plaintiffs another certain Daniels lease for $750, which sum they had paid partly by delivering 1,200 feet of tubing of the value of $192. Judgment was rendered, as prayed in the petition, and this appeal granted.

Due to the failure of appellant's counsel to comply with the rule of the court respecting the statement of points relied on in his brief, it is not clear upon just what grounds he seeks a reversal. But it would seem that they are: (1) That the decision is contrary to the evidence; (2) the contract sued on was represented by the writing filed and it had been materially altered; (3) an affirmative allegation of the answer was not traversed, and this entitled defendants to judgments; (4) refusal to transfer the case to the common-law docket for a trial by a jury; and (5) a refusal of the judge to vacate the bench.

1. The plaintiffs positively testified to the procurement and assignment of the three leases to the defendants and the contract to pay for them. They were corroborated by testimony of others that they had heard the defendants say they had acquired those leases, and by some activity on their part. The defendants emphatically denied there was ever such a contract, and say the only agreement they had with plaintiffs related to the Daniels lease, which had been satisfied. They were corroborated by a witness who heard a conversation between the parties, during which one of the defendants declined to take

the three leases referred to by the plaintiffs. Parties on each side introduced evidence attacking the reputation of their adversaries, and they in turn supported their respective reputations.

The writing referred to in the petition as being filed with it, but which was not in fact done, is as follows:

> "*A. L. Cooper and D. Glenn Sublett have this 29th day of Jan. 1924, assigned to us The V. Daniels oil lease, with the understanding that all rods, caseing and tubing in the well to be theirs unless we clean the well out in 30 days from date. In settlement of all other accounts we have* received of A. L. Cooper & D. Glenn Sublett, the sum of One Hundred Ninety Two Dollars, in full payment and settlement of Twelve hundred feet of two inch tubeing. *Said amount being credited on payment of leases. Said leases being the Noah Cooper, Addie Collingsworth, and Stormy Cooper leases. Leaving a balance due Cooper & Sublett of $1,308.*
>
> "Hobbs Bros. Drilling Co.
> "By Leonard B. Hobbs."

It will be observed from the statement of the case above that the contract sued on was that entered into in October, 1923, and that this document was introduced as evidence of the existence of that contract and to show that there was a balance due on it. The suit was not upon the instrument. Hence the application of the doctrine that a fraudulent material alteration of an executed and delivered instrument renders it void and ineffectual can be considered only as it may affect the evidential value of the paper. It is vigorously contended by appellants that so much of the paper as is italized above was added to a paper which they signed on January 29, 1924, evidencing the credit of $192 on what they owed for the Daniels lease, and that that is the lease referred to in it. It is claimed that the word "received" began with a capital letter, and over this a small letter "r" had been struck or substituted for the partly erased capital letter, thereby making it appear as a word in the middle of a sentence. Also that the letter "s" had been added to the word "lease," thereby making it appear that the credit was on an obligation covering more than one lease and to have it correspond with the added sentence

describing the plurality of leases as the three claimed to have been sold to defendants, and for which it is falsely shown a balance of $1,308 was acknowledged. It was further testified that the added letter "s" was out of line, and that the date "January 29, 1924," had appeared just above the word "received," and it had been erased. This paper became the center of quite a storm between parties and counsel. The plaintiffs refused to file the original or to permit it to be photographed. Finally, the court placed the instrument in the hands of a banker as its receiver, but unfortunately he lost it from his pocket, and so it has not been available for examination by either the trial or this court. The defendants introduced several responsible witnesses who had seen the original, and they undertook to describe it from memory and to say that it had an unusual appearance, indicating that appellants' contention of an alteration was correct. On the other hand, one of the plaintiffs, who is an attorney, stated that he personally typed the paper at the time it was signed, and, while it may have shown an erasure of the date and an imperfect correction of the letter "r" as well as the displacement of the letter "s," they were simply his errors and lack of neatness. In this he was corroborated by other testimony. It is difficult to understand why a paper establishing an indebtedness of $1,308 should have been so loosely drawn by one who was able to draft a formal instrument. Further, it may be said that the actions of the plaintiffs and their counsel with respect to this paper create quite a suspicion against its validity. But the erasure and lack of neatness and accuracy in the writing are not necessarily significant for a lawyer using a typewriter is very prone to err. Indeed, some may say it would be unusual for one to produce a paper that was free from typographical errors. We conclude from the evidence before us that the paper is what it purports to be, and that, in connection with the verbal evidence, is sufficient to sustain the decision of the chancellor on the facts.

In their answer the defendants affirmatively pleaded they had acquired the Daniels lease, and that the $192 credited on the payment for the other three leases described in the petition was in fact paid under the Daniels contract. It is claimed that a failure to deny this entitled the appellants to judgment. It may be

doubted whether it was necessary, in view of all the other pleadings, to specifically traverse this (Forsythe v. Rexroat, 234 Ky. 173, 27 S. W. (2d) 695) but, whether so or not, there was an agreed order previously entered giving time for the filing of the answer, and in it was provided that any affirmative matter therein should be traversed of record.

The suit was filed in equity (apparently because of an attachment levy), but the issue was a legal one, and the defendants were entitled to a jury trial, had they made seasonable efforts to secure it. It is provided in section 10, Civil Code of Practice, that a defendant may have such transfer made by motion entered when he answers. The answer in this case was filed August 25, 1925, and a motion to transfer to the common-law docket was not made until May 7, 1927, which was long after depositions had been taken in the case and numerous interlocutory motions and orders made. Clearly, it was too late.

With respect to the motion to have the judge vacate the bench, the record discloses that the petition was filed May 3, 1924, and on September 30, 1924, there was included an order providing for a trial by a special judge because of the disqualification of the presiding judge in certain cases, among which was this one. However, no such special judge ever sat in the case, and it was continued and practiced for nearly three years without any movement being made to have the regular judge vacate the bench. After the court had passed upon the exceptions to the depositions, and was apparently ready to render a decision, the defendants filed a motion to have him vacate. It was supported by an affidavit that the presiding judge was closely related to the plaintiff Sublett's wife; that each of the plaintiffs lived in Magoffin county, while the defendants resided in Pennsylvania and West Virginia, and therefore they believed they could not get a fair and impartial trial by the regular judge. A responsive affidavit (which was not controverted) showed that plaintiffs' counsel at all times well knew the connection of plaintiff's wife to the judge, which was that he was the sixth cousin of the wife of one of the plaintiffs. It is not necessary to consider whether this extreme degree of relationship disqualified the judge (cf. Petrey v. Holliday, 178 Ky. 410, 199 S. W. 67), for it is manifest that defendants waited during all these years

until they saw they were losing the case before they made any motion in this direction. Allen, Commonwealth's Attorney, v. Bach, 233 Ky. 501, 26 S. W. (2d) 43. Clearly they waived whatever right they may have had, and there is no merit in this ground for a reversal.

Perceiving no prejudicial error, the judgment is affirmed.