## Miller v. Commonwealth.

(Decided November 24, 1931.)

222

C. C. WILLIAMS, R. B. BIRD and J. C. BIRD for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

R. H. Miller, a director of the People's Bank of Mt. Vernon, Ky., was indicted along with other directors on the charge of assenting to the receiving of deposits by the People's Bank of Mt. Vernon, Ky., after they had knowledge of the fact that the bank was insolvent. On a separate trial he was found guilty, and his punishment fixed at one year's imprisonment. He appeals.

At the outset we are met by the contention that appellant was never indicted, and that the court erred in not permitting him to introduce evidence to that effect. The record discloses that, after appellant had testified, he introduced as a witness the foreman of the grand jury which returned the indictment, and offered to show that the memorandum of the minutes of the grand jury did not contain appellant's name, and that the indictment was drawn by the commonwealth's attorney without authority from the grand jury. The court excluded the offered evidence on the ground that it was not material to any issue in the case. As there had been no motion

to quash or set aside the indictment, and the evidence was offered toward the close of the trial, there can be no doubt that the action of the court was proper for the reasons given. There is also another reason why the evidence was not admissible. The indictment was indorsed "A true bill," and signed by the foreman of the grand jury. It was presented to the court by the foreman of the grand jury in the presence of the grand jury, was received by the clerk from the court, and then filed in open court and noted of record. In short, the indictment was regular in form, and properly returned, and could not be impeached by the grand jurors. Criminal Code of Practice, sec. 112; Commonwealth v. Skeggs, 3 Bush, 19.

We have carefully examined the record, and do not find that any material evidence was improperly admitted. It is true that much time was taken up in showing that $58,542.72 on deposit in the savings department had been shifted from the accounts of the depositors to the accounts of appellant and others in order to make up their overdrafts. This evidence had such a direct bearing on, and was so closely related in time, place, and circumstance to the solvency of the bank, and appellant's knowledge thereof, that it was clearly admissible, although it may have had a tendency to show that appellant was guilty of some other offense. Parrish v. Commonwealth, 136 Ky. 77, 123 S. W. 339.

We find no basis for the contention that appellant was entitled to a peremptory instruction. The evidence of the condition of the bank at the time the deposit was received and of appellant's opportunity by reason of his position in, and control over, the bank, and his close connection with its affairs, to observe and understand what was going on, was such as to make the insolvency of the bank, and appellant's knowledge thereof a question for the jury. Parrish v. Commonwealth, supra. But it is suggested that appellant is not guilty because he had been in bed for several days prior to the receipt of the deposit, and knew nothing about it, and that because of this fact the court not only erred in refusing to direct his acquittal, but erred in giving an instruction to the effect that, if the deposit was received by an employee or officer of the People's Bank of Mt. Vernon, Ky., who was engaged as such employee or officer in receiving deposits for and on behalf of said bank while it was conducting

its business with the knowledge and under the general authority of the defendant, then the defendant assented to the receiving of said deposit within the meaning of the instructions. It is clear that the court did not err in either particular. Sickness, or absence from the bank from any other cause, without more, will not excuse a director. On the contrary, if, without protest or other appropriate action, the bank is kept open for business under his authority, and with his knowledge, he assents to the receiving of deposits by those employed for that purpose, although he may have no personal knowledge of the fact that such deposits were actually received. It follows that the given instruction was proper. Parrish v. Commonwealth, supra.

In view of the conclusion of the court it becomes unnecessary to determine whether the trial court abused a sound discretion in refusing a continuance on account of the absence of J. C. Bird, cocounsel for the defense, or whether the court's persistence in admonishing the jury of its duty to agree on a verdict after it had reported twice that they were unable to agree amounted to such coercion as would authorize a reversal.

In the course of his argument, counsel employed to assist in the prosecution used the following language:

"The attorney for the defendant argues that defendant was ill and could not have known about the deposit. He was a Director of the bank, and was required to know and the law imputed knowledge to him—knowledge of the bank's insolvency, and that it was being kept open for business is what convicts the defendant. He can't say that he did not know the deposit was made and get by with that.

"It would have been better for him if he had thrown up his hands and confessed his guilt. This man is a thief. He stole the money of men, women and children of Rockcastle County and those who have labored on the hillsides for a lifetime. Ten years will not be too much for him. If this crime had been committed in some communities outraged and plundered citizens would have hanged him. But they are law abiding, patient and long suffering people, and they have left his punishment to this jury. Convict him and give him the limit, and it will be a warning to other bank wreckers."

To say that the law imputes to a director knowledge of the bank's insolvency is hardly a correct statement. The law goes no further than to permit the jury to infer knowledge from his position in, and control over, the bank, his close connection with its affairs, and his opportunities to observe what is going on. Counsel's observation that "it was being kept open for business is what convicts the defendant" is not so far afield as to be a departure from legitimate argument. However, we would not be inclined to reverse the case because of either remark. With respect to the concluding words, an entirely different situation is presented. Appellant was on trial for the offense of assenting to the receipt of deposits after he knew that the bank was insolvent. He was not on trial for bank wrecking, or for having stolen the money of men, women and children of Rockcastle county and those who had labored on the hillsides for a lifetime. Evidence of the transfer of accounts to cover up overdrafts and of loans to him and his family, was admissible, not for the purpose of showing that he was guilty of any other offense, but solely for the purpose of showing insolvency and his knowledge thereof. In the circumstances, it was highly improper to call appellant a thief and a bank wrecker. The purpose of the language, as well as its natural effect, was to arouse the passions and prejudices of the jurors, and make them feel that appellant's derelictions other than the one for which he was being tried would justify a verdict of guilty. But counsel did not stop there. He went further and asked a conviction on the ground that, if the crime had been committed in some communities, outraged and plundered citizens would have hanged appellant, thus making the jury feel that any punishment that they might inflict would be mild in comparison with what other communities would do, and would fall far short of the requirements of outraged justice. In using this language not only did counsel go outside of the record, but the language itself was so abusive and inflammatory as to take away from the jurors that poise of mind so essential to a fair and impartial trial. Similar arguments, though some of them did not so far transcend the limits of legitimate debate, have been frequently condemned and adjudged to be prejudicial. Mount v. Commonwealth, 120 Ky. 398, 86 S. W. 707, 27 Ky. Law Rep. 788; Louisville & N. R. Co. v. Crow, 107 S. W. 807, 32 Ky. Law Rep. 1145; Weil v. Hagan, 161 Ky. 292, 170

S. W. 618; Little v. Commonwealth, 221 Ky. 696, 299 S. W. 563. In the circumstances, a reversal of the judgment is the only alternative.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.