# Miller v. Commonwealth.

(Decided January 22, 1932.)

C. C. WILLIAMS and J. C. BIRD for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, R. H. Miller, and others, were indicted in the Rockcastle circuit court, in which they were accused of the offense of assenting to and receiving deposits of money by patrons of the People's Bank of Mt. Vernon, Ky., of which defendants were directors and officers, and at a time when the bank was insolvent and defendants knew it. The particular deposit upon which the indictment was founded was alleged therein to have been made on April 21, 1930, by J. F. Dees in an amount of $87.05. On his separate trial, defendant was convicted and given the maximum punishment provided by law, which is ten years' confinement in the penitentiary. The statute creating the offense and fixing the punishment therefor is section 597 of the 1930 Edition of Carroll's Kentucky Statutes and was enacted in 1893, being section 60 of chapter 171, page 612, of the Session Acts of that year. On this appeal but two argu-

ments are made for a reversal of judgment, and which are: (1) Improper and prejudicial remarks of prosecuting counsel in his argument to the jury; and (2) fatal variance between the allegations of the indictment and the testimony, each of which will be considered and determined in the order named. But before doing so, we deem it proper to say that none of the other errors relied on in the motion and grounds for a new trial are available for that purpose, since we regard them as without merit, and they were so determined in the recent case of the same appellant (R. H. Miller) against the commonwealth, decided by this court November 24, 1931, and published in 241 Ky. 221, 43 S. W. (2d) 687, 689.

It might also be stated at this juncture that instruction No. 6 given by the court is complained of upon the ground that it is based on the evidence which it is contended constituted the variance as a basis for argument (2), and, since we have concluded that it is meritorious, it follows that the giving of instruction No. 6 was error, and should not be given.

The statements made by prosecuting counsel forming the basis of argument (1) was in these words: ''The fact that the defendant was a director required him to know, and he did know, the bank was insolvent when he received this deposit. While these poor people were carrying their money in at the front door these thieves were carrying it out at the back door. If you acquit this defendant, I hope you will lose every cent you may have in bank before Saturday night. Write your verdict of guilty across the skies like a banner and teach such thieves and other like thieves, that they cannot steal the people's money.'' Practically the same language, in substance and effect, made the sole error (for which the judgment of conviction was reversed) in the recent case of Miller v. Commonwealth, supra, but we will not incorporate it in this opinion, but refer to it for that information.

In condemning it we said therein:

''The purpose of the language, as well as its natural effect, was to arouse the passions and prejudices of the jurors, and make them feel that appellant's derelictions other than the one for which he was tried would justify a verdict of guilty. But counsel did not stop there. He went further and asked a

124

conviction on the ground that, if the crime had been committed in some communities, outraged and plundered citizens would have hanged appellant, thus making the jury feel that any punishment that they might inflict would be mild in comparison with what other communities would do, and would fall far short of the requirements of outraged justice. In using this language not only did counsel go outside of the record, but the language itself was so abusive and inflammatory as to take away from the jurors that poise of mind so essential to a fair and impartial trial."

The complained of language employed by the prosecutor in that case was no more inflammatory or abusive or inimical to an impartial trial than is the complained of language in this case.

In the case of Jones v. Commonwealth, 191 Ky. 485, 231 S. W. 31, 33, in condemning unfair and prejudicial conduct of prosecutors, we employed this language:

"The chief purpose in the conduct of trials is, or should be, to see that justice as near as may be, shall prevail. This can never be accomplished by the injection of misleading matters into the record, either directly or indirectly; for the temple of justice has for its sole foundation, and is built upon, truth, and it is upon this alone that all the law of the country, both civil and criminal, is erected. Attorneys are officers of the court and constitute as much a part of its machinery for administering right and justice in the conduct of trials as does his honor upon the bench, and it would certainly be an unheard-of proceeding for the latter to engage in an effort to create a false impression upon the minds of that part of the judicial machinery whose duty it is to pass upon the facts."

That statement was fortified in that opinion by the cases of Louisville & N. R. R. Co. v. Payne, 133 Ky. 539, 118 S. W. 352, 19 Ann. Cas. 294; Shields' Adm'rs v. Rowland, 151 Ky. 136, 151 S. W. 408; and Baker v. Commonwealth, 184 Ky. 207, 211 S. W. 566. There are many others from this court and also other courts to the same effect, and textbooks on the practice universally announce that it is prejudicial error for counsel, and especially prosecutors in criminal prosecutions, to em-

ploy inflammatory language toward a litigant which has no other place in the record, except for the edification of the gallery and to inflame the passions and prejudices of the jury against the litigant to whom it is applied. Because of such universal disapproval, we do not deem it incumbent upon us to lengthen the opinion by the citation of further cases and authorities.

It is, however, proper to say that, since the law cloaks a defendant in a criminal prosecution with the presumption of innocence, and which remains around him until he is proven guilty, followed by a verdict of conviction, it would seem to require no argument to demonstrate that counsel possesses no license to tear away that protection and to pronounce in his official or semi-official capacity, that the defendant is guilty, not of the offense for which he is being tried, but of other entirely independent and distinct ones for which he is not on trial. In this case, defendant was not being tried for theft. He was neither charged with embezzlement nor larceny, but only with the statutory one of receiving as an officer of the bank, deposits when it to his knowledge was insolvent. Without expressing any opinion as to the guilt or innocence of this defendant, it appropriately might be said that the offense with which he was charged and being tried could be committed, although the perpetrator was entirely free from felonious or improper intent. An illustration of the latter would be where a bank, because of some innocent reason, became indebted in an amount greater than its available assets but not hopelessly insolvent, and the defendant as an officer thereof entertained the honest conviction that it could weather the storm and recover from its financial affliction by continuing in business, and thereby reached the conclusion that it would be the better course to do so rather than to precipitate liquidation of its affairs to be followed by the high cost of such a course, and so believing and acting thereon, receive a deposit thereby violating the statute. Such one could not be classed as a thief, nor would a jury trying him therefor incur the penalty of losing all of their deposits in that bank if they should acquit him. The bold charge in the language complained of herein, that defendant was a thief and was carrying money that was deposited at the front door of the bank out of the back door thereof, was not only a charge of the guilt of defendant of an independent offense, but likewise charging him of committing it with reference

to money of debtors other than the particular one whose money was received upon which the indictment was based.

Prosecuting attorneys have the right to faithfully represent the commonwealth to the end that criminal laws enacted for the peace, quietude, and protection of society might be enforced and observed. But they have no right to depart from the evidence, or legitimate conclusions deducible therefrom, and to convert themselves into both a grand and petit jury and proceed to indict the defendant on trial for other offenses, and to also convict him thereof before the jury trying his case. We are aware of the ordinary enthusiasm of attorneys for the success of their cause, and likewise aware of the latitude accorded them in the argument of their client's case; but they should confine themselves to the evidence and to the application of it to the particular point upon which it was admitted, and then to draw therefrom all legitimate deduction favorable to their cause of which in logic it is capable. When that is done their task is performed and their duty discharged, and a departure therefrom into the fields of abuse and vilification, to such an extent as to create prejudice in the minds of the jury, is the exercise of a license, that they do not possess, and which is denied to them by the law as well as forbidden by all codes of ethics and fairness that should characterize all trials. Therefore, following the holding in the recent Miller case, supra, as well as others herein referred to, and still others not cited, we are constrained to the conclusion that the argument complained of so transgressed the bounds of proper argument as to compel a reversal of the judgment, and which is conceded in brief for the commonwealth.

In disposing of ground (2), it will be remembered that the indictment charged that the involved deposit was made for and on behalf of J. F. Dees and in his name, and that the money was his property. The testimony, however, developed that Dees had theretofore acquired the entire stock of a local corporation, the Mt. Vernon Telephone Company, and that the $87.05 was deposited by one of its employees to its credit; there being no deposit on that or any other day to the credit of Dees for that or any other amount. It is, however, insisted by the commonwealth, and the court so instructed the jury in its instruction No. 6, that if Dees was the

owner of the stock in the telephone company, then the variance between the charge in the indictment and the proof was immaterial and not fatal; but we do not so conclude. A variance between the allegation and the proof is fatal when a conviction or acquittal would not be a bar to a prosecution for the same transaction, and we are convinced that neither result of the trial on the instant indictment would bar a future prosecution of defendant for receiving a deposit by the Mt. Vernon Telephone Company of the same amount and on the same day. It therefore follows that the indictment should be corrected by dismissing it and procuring a new one conforming to the facts of the transaction.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial and to set aside the judgment, and for proceedings consistent with this opinion.