## Wiley v. Commonwealth.

(Decided Dec. 9, 1932.)

MARCUS C. REDWINE and C. F. SPENCER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On Saturday night, November 14, 1931, the tobacco barn of Thomas Henry Clay, located on a farm in Bourbon county, Ky., was broken into, and a quantity of tobacco was taken therefrom. Later the grand jury of the county indicted appellant, accusing him of committing the crime. At his trial thereon he was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled, and from that order and the judgment pronounced thereon he prosecutes this appeal. His counsel urge as grounds for reversal: (1) That the court erred in not sustaining his motion for a directed verdict of acquittal, but, if mistaken in that, then the verdict is not sustained by the evidence and is flagrantly against it; (2) "the court erred in admitting evidence obtained by search warrant, because the commonwealth upon motion of the defendant failed to produce said search warrant, and to show it was lost;" (3) "the court erred in giving to the jury verbal instructions or in urging the jury to return a verdict," and (4) improper argument to the jury by the commonwealth's attorney, each of which will be disposed of in the order named.

■ The testimony for the commonwealth was entirely circumstantial, but which does not militate against the soundness of the verdict if the circumstances are sufficiently convincing to sustain it. Although that rule is thoroughly established, counsel argue that "not a single witness for the commonwealth connects the appellant with the breaking (of the barn) or the hauling away of the tobacco," but which if true (and it is) does not necessarily authorize a reversal of

the judgment. We must therefore look to the circumstances upon which the jury based its verdict.

Appellant's mother lived at Winchester, Ky., not a great distance from the barn that was broken into. She owned two farms, one in Clark county and the other in Powell county. The appellant at that time was living at her home in Winchester, and appears to have had no regular occupation, and he was engaged in performing work wherever he could obtain it, and especially when his mother was not appropriating his services. The tobacco which was housed in the barn, and some of which was taken out of it, was grown by a tenant of Mr. Clay by the name of Charlie Haggard, and he was connected in some way by marriage with appellant. The tenant employed appellant to assist him in growing, housing, and stripping a part of the tobacco, and he had ceased to perform the latter work only about ten days or two weeks before the crime was committed. Following that, appellant appears to have been in the service of his mother, in doing like work on her farm in Powell county, whereon she had grown tobacco and had it housed in a barn located on that farm. Appellant had served a former term in the penitentiary for some kind of theft, and which fact was brought out by his own counsel in the examination of his client.

Strippers of tobacco in the Clay barn quit their work at noon on November 14, 1931, and fastened its double doors with wire. They did not return to it until the following Monday morning, when it was discovered that the fastening had been removed and the barn had been entered and tobacco had been taken. The pilfered tobacco was that which had been stripped and piled in bulk, the hands having been hung on sawed sticks, and it was mostly the highest grade of tobacco. Truck tracks appeared in the driveway entering the barn, and their imprint showed the kind of treading on the wheels, and which clearly indicated that the truck employed in carrying away the tobacco was equipped with different makes of tires, and there was testimony showing what those brands were. Appellant's mother owned a truck, and which fact was known by some one present. It also appeared that appellant's record was known, and that he was familiar with the approaches to the barn from two public roads, each being about half a mile from it. One of those approaches had two

gates across it, while the other had four. Suspicion turned to appellant, and his mother's truck was examined. The tires of the wheels thereon were found to be of two different makes, and the treading upon them corresponded to the tracks found at Mr. Clay's barn and points en route thereto.

The discovery of such facts was followed by a visit to the farm of appellant's mother in Powell county upon which appellant and some assisting hired hands had recently engaged in stripping tobacco, but the sticks used in that barn were split ones, having been made by a Mr. Pelfry, who grew the housed tobacco on that farm for appellant's mother as her tenant, but who had sold it to his landlady before it was stripped. Messrs. Clay and Haggard decided to search that barn, and they procured a search warrant for that purpose; but, according to the proof, they did not use it, since appellant opened the barn and they entered it with his permission, although it was not in his technical legal possession, he having only a license to enter it from his mother as her servant. Upon entering the barn, there was found a bulk of tobacco covered over with some eighteen sticks of inferior grade, and which were split ones; but under them the tobacco corresponded exactly in every particular with that taken from the Clay barn, and it was hung on sawed sticks. The owners of the stolen tobacco positively identified it as a part of that taken from Mr. Clay's barn. That testimony, together with the circumstances we have narrated, might alone be sufficient to sustain the verdict.

However, there was also another proven and undisputed fact, which fills all blanks and vacuums, if any, up to this point, and which furnishes almost positive proof of appellant's guilt. That fact was and is: That Messrs. Clay and Haggard employed Ed Schooler to assist in stripping the tobacco in the Clay barn, and his exclusive duty was the tying of the first grade into hands after others had stripped the leaves from the stalks. He was especially employed for that task because he was an adept in tying tobacco hands by adopting a peculiar and individual method in wrapping the tie leaf and in fastening the stalk end of it by pushing it twice through the tied hand, thus concealing it from the outside, all in such a manner as to give the bundle a greater smoothness and at the same time hide the

unappropriated end of the tie leaf. The tobacco found in the Powell county barn was so tied, and there was no effort on the part of appellant to show that either he or his co-laborers employed the same method in the stripping of the tobacco of his mother in the barn where the Clay tobacco is said to have been found.

In addition thereto, the commonwealth introduced Jim Williams, who lived on a public road adjoining the Clay farm and opposite the place where the road leading into it left the public road. He testified that on the same night the tobacco was taken he saw a truck enter the Clay farm from the public road at about 9:30 o'clock; but he did not know whose it was, nor did he get a perfect view of it or its driver. It also introduced Richard Adams, who lives near the Powell county farm of appellant's mother, and he testified that at about 12 o'clock that night a truck entered it from the road in front of his house and that he heard it "come back out sometime before daylight," and both appellant and his mother testified that he was the only one who operated her truck, which, when not being used, was kept at the residence of the owner in Winchester.

Opposed to that evidence, appellant testified and denied having taken the Clay tobacco, although he admitted that no one drove his mother's truck but himself. He stated that he spent the night at his mother's home, although his wife was elsewhere. Six or more other persons lodged in that same house that night, among whom was his mother, his brother and the latter's wife, a Mr. Rice, and perhaps others. He testified that he retired at about 9 or 9:30 o'clock and did not leave the house during the night. His mother corroborated him as to his retiring, but she did not know what occurred after she went to sleep, but she stated that, if her son left during the night, she did not know it. The testimony of appellant's sister-in-law was substantially the same as that of his mother. None of the other occupants testified, and no explanation is found in the record of the reason why they did not do so. It is upon the condition of the proof as so outlined that counsel urge this ground for reversal. But, in view of many of our former opinions upholding convictions on circumstantial evidence of much less con-

vincing force than what this record presents, we are convinced that the contention should be denied.

■ Ground 2 is unavailable for two reasons: (a) Appellant consented for the search to be made and thereby waived his right to object to it as well as to any evidence that was discovered by it, even if the searched property had been his own or occupied by him in such a manner as to vest him with legal possession; and (b) the property being neither his, nor in his possession, he may not avail himself of an illegal search if one was made, nor may he successfully object to the introduction of testimony to prove what was found by the search. Anderson v. Commonwealth, 204 Ky. 486, 264 S. W. 1087; Weber v. Commonwealth, 202 Ky. 499, 260 S. W. 1; Keith v. Commonwealth, 197 Ky. 362, 247 S. W. 42, and Bowling v. Commonwealth, 193 Ky. 642, 237 S. W. 381. It is therefore clear that this ground is also without merit.

■ After the jury had considered the case for about an hour, it reported that it was unable to agree, whereupon the learned trial judge in open court said to it: "I would not ask any juror to stultify himself. It is frequently the case that every man can not see, eye to eye, with every other man, and it is consequently necessary to endeavor to convince each other of your point of view, where you do not agree. Every man can not always have his way. Some jury must decide this case, and I know of no better jury to do that than this jury. Try to agree. Retire, gentlemen, and make every possible effort to reach a verdict." It is of that admonition that counsel complain. A similar statement by the trial judge was held by us not to be prejudicial in the case of Sandefur v. Commonwealth, 143 Ky. 655, 137 S. W. 504. Such remarks from the court to the jury in an effort to induce it to arrive at a verdict is common practice, and has for its support a positive duty on the part of the presiding judge under such circumstances to so address the jury in furtherance of a prompt and needful dispatch of the business of the court. We have always upheld and approved that practice under similar conditions; provided always that nothing is said by the court fundamentally prejudicial to the rights of the defendant on trial. We can detect nothing in the remarks complained of containing in the

remotest degree any such effect and for which reason we are also compelled to overrule this ground.

■ The fourth and last ground is directed to these remarks made by prosecuting counsel in his closing argument to the jury: ''Bring in a verdict of guilty in this case and teach the people of this county and Clark county that they cannot steal the goods of others. This community can not afford to lose any property. Even in good times they could not afford to, but never could they afford less to lose goods than now. Let your verdict teach criminals that they can not carry off the goods of the people of Bourbon County.'' In the recent case of Miller v. Commonwealth, 242 Ky. 122, 45 S. W. (2d) 853, 854, the opinion said: ''Prosecuting attorneys have the right to faithfully represent the commonwealth to the end that criminal laws enacted for the peace, quietude, and protection of society might be enforced and observed. But they have no right to depart from the evidence, or legitimate conclusions deducible therefrom,'' etc.—to which might be added that it is the duty of prosecuting attorneys to faithfully represent the commonwealth, and it is everywhere declared, as well by this court as by others, that, in performing that duty, prosecuting counsel in his argument to the jury may indulge all ''fair and reasonable deductions and conclusions to be drawn therefrom, and the application of the law, as given by the court, to the facts proven. Controlled, regulated, and bound alone by these limitations an advocate may, with perfect propriety, appeal to the jury with all of the power, force, and persuasiveness which his learning, skill, and experience enable him to command, and of this character of argument the accused may not complain, even though he feels that his conviction may be traceable more directly to the argument of counsel than to the facts proven.'' Housman v. Commonwealth, 128 Ky. 818, 110 S. W. 236, 239, 33 Ky. Law Rep. 311. That excerpt has been continuously approved by this court from the day it was uttered, and without dissent. It is true that in a number of cases we have reversed judgments of conviction for improper argument of prosecuting counsel, but in every one of them there was found a most radical and prejudicial departure from the limitations outlined in the excerpt from the Housman Case, and wherein counsel wholly departed from

the testimony and indulged in collateral accusations and abuse of the defendant on trial, as well as in drawing deductions wholly unwarranted by any testimony in the case, and which we concluded in those cases was not only unfounded, but extremely prejudicial.

The remarks of counsel complained of in this case were most extremely appropriate; and, were we to place our mark of disapproval upon them, we would strip prosecuting counsel of their right to perform their duty, and require of them to sit silently by and permit law violators to take charge of and run the courts and country without the right to enter a protest in behalf of the people who commissioned them to enforce the law. It follows that this ground also must be disallowed.

Finding no error prejudicial to the appellant's substantial rights, the judgment is affirmed.