# Burnam v. Commonwealth.

May 31, 1940.

King Swope, Judge.

Tucker, Thomas & Anderson for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

Eugene Burnam, a negro boy 15 or 16 years of age (there being some conflict in the evidence as to the year of his birth), was tried on an indictment charging him with rape by force and against the will and consent of his victim, a crime denounced by Section 1154, Kentucky Statutes. The trial resulted in his conviction, the jury fixed his punishment at death, and he appeals from the judgment entered on that verdict.

While four alleged errors are complained of in his motion and grounds for a new trial, he abandoned all of them in his brief but the one that the trial judge made

remarks prejudicial to his substantial rights when the jury reported for the second time that they had not reached a verdict. From the bill of exceptions it appears the case was submitted to the jury about 10 o'clock on the night of November 24, 1939, and not having reached a verdict by midnight, they were retired together under guard. The jury were given the case again about 9 o'clock Saturday morning, and at noon reported they had not reached a verdict, whereupon the following transpired:

> "The judge then said to the sheriff and to the jury that the sheriff should take the jury to lunch and bring them back after lunch to resume their deliberation; that he would be at his home subject to call that afternoon or at any time, if the jury reached a verdict; that he did not have to leave town until the following Thursday (Nov. 30th, Thanksgiving Day—a holiday)."

To this the defendant excepted. The jury resumed their deliberations at 1 o'clock and returned their verdict at approximately 2:30 o'clock that afternoon.

There were two questions before the jury; the determination of appellant's guilt, and the fixing of his punishment in the event of a conviction. The jury had been considering the case five hours, which cannot be deemed an excessive length of time for a case of this magnitude where the punishment could be fixed from 10 to 20 years in the penitentiary, or by death. The evidence is sufficient to sustain the jury's verdict, but we cannot escape the conclusion that the unguarded and inappropriate remarks of the judge "that he would not leave town until the following Thursday," however innocently they might have been made, must have conveyed to the jury the thought he intended to hold them together and keep them on the consideration of this case for four additional days in the event they did not sooner reach a verdict. Such words could only have been construed by the jury as a veiled threat on the part of the judge to do this. The bill of exceptions state this was the last case on the docket and the judge had planned to start on a trip to Florida on Thanksgiving Day; that this was what he had in mind when he said to the jury he was not leaving town until then. But why tell the jury of his personal plans five days in advance unless he

sought to inform them by indirection that they would be kept together four additional days and nights in the event they did not reach a verdict?

When a jury is having difficulty in reaching a verdict, a presiding judge may in appropriate language and at an opportune time call to the attention of the jury the importance and the desirability of their coming to an agreement if they can do so in conformity with their oath and judgment and without surrendering an honest and conscientious opinion any member of the body may have. There is no set or prescribed language the presiding judge may use on such an occasion and of necessity what he may say with propriety must largely be left to his good judgment. Under our system of jurisprudence, the jury is the sole arbiter of facts and possesses the exclusive right to agree or disagree, and no judge by threat, direct or indirect, veiled or open, shall attempt to coerce a verdict or exert the powerful influence of his office to force one. It is generally thought the words and acts of a presiding judge have great weight with juries and for that reason we have often written that he should at all times be cautious in what he says or does in the presence of the jury. Sandefur v. Com., 143 Ky. 655, 137 S. W. 504; Taylor v. Com., 240 Ky. 450, 42 S. W. (2d) 689; Miller v. Com., 240 Ky. 355, 42 S. W. (2d) 523; Wiley v. Com., 246 Ky. 425, 55 S. W. (2d) 41. In the Sandefur opinion authorities are cited showing the limit to which a trial judge may go in requesting the jury to find a verdict and beyond which he cannot go with propriety.

In Canterbury v. Com., 222 Ky. 510, 1 S. W. (2d) 976, 977, the judge told the jury he would keep them together for 10 days unless they reached a verdict, while in the instant case, it could but be inferred by the jury from the judge's remark he intended to keep them together four more days if necessary to obtain a verdict. The following excerpt from the Canterbury case aptly applies here:

"While the Code (Criminal Code of Practice, Section 251) gives to the circuit judge a reasonable discretion as to the time the jury may be held together for the purpose of arriving at a verdict, and the court may properly admonish them as to their duty and the importance of reaching an amicable conclu-

sion, he is not authorized to do this arbitrarily, or to do or to say anything to coerce their action. [Here authorities are listed.] In capital cases the jurors are placed under guard, and in a sense kept in confinement, and a threat by the trial judge to prolong such confinement for a period of ten days is calculated to coerce and control a weak and timorous juror. Clearly this was erroneous, and highly prejudicial to the defendant's substantial rights."

We can make no distinction between a direct threat of the trial judge to keep the jury together for 10 days and a veiled threat to keep them together for 4 days, as we think the latter would be inclined to coerce the jury to practically the same extent as would the former.

Our view that it is reversible error for a trial judge directly or by innuendo, however innocently made, to threaten to keep the jury together to coerce them into returning a verdict, is followed in the majority of the foreign jurisdictions, both state and federal, as is seen by examining the copious annotations on the subject in 85 A. L. R. 1420-1456.

The judgment is reversed for proceedings not inconsistent with this opinion.

Whole Court sitting, except Judge Rees, who was absent.