**Paul E. ABBOTT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 22, 1961.

Rehearing Denied Jan. 26, 1962.

Rodney J. Thompson, Winchester, H. M. Shumate, Shumate & Shumate, Irvine, for appellant.

John B. Breckinridge, Atty. Gen., William A. Watson, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

A "shootin' scrape" took place at the Big Oaks, a drive-in restaurant in Powell County, on Sunday night, February 15, 1959, between two groups referred to as the Clark County boys and the Powell County boys. George Sales was killed by a .38 caliber bullet. Paul E. Abbott and five others were indicted for murder. The indictment charged that one of the defendants did the shooting and the others named aided and abetted. One of them, Clarence Oldfield, Sr., has been convicted of voluntary manslaughter as an aider and abettor. Oldfield v. Commonwealth, Ky., 334 S.W.2d 346.

Abbott, tried alone, was convicted of voluntary manslaughter. He was sentenced to three years' confinement. He urges on appeal that the evidence is insufficient to sustain a conviction and that the judge coerced the jury into making a verdict.

Much of the same evidence introduced in the Oldfield trial was heard on this trial, with some inconsistencies and contradictions. There are contradictions in the testimony given in the Abbott trial, but certain facts stand out as admitted or uncontradicted.

It is unquestioned that George Sales died from the wound inflicted by a .38 caliber bullet fired during the battle at Big Oaks between the two groups mentioned. Paul E. Abbott, known as "Hammer," admits that he participated in the fracas with others of the Clark County group and that he fired a pistol.

"Hammer" admits that George Sales "whipped" him and ran him to a neighbor's house on Wednesday night before the killing on Sunday night, and that Sales hit him in the false teeth with a beer bottle on Saturday night. Despite such inhospitable treatment, he returned to Powell County for more recreation on Sunday night, armed with a pistol for self-protection and accompanied by a group of associates, some of whom were also armed. There was testimony for the prosecution that Abbott, with some of his associates at Powell's store before the shooting, referred to the previous trouble with Sales, and announced that he was going back that night (Sunday) to settle it and that if the sheriff didn't get them the undertakers would have a job. Abbott denied this statement.

The evidence is in conflict as to which group started the trouble on Sunday night. It was conflicting on the point of whether the Powell County boys were armed. There was evidence for the defense that Sales had a pistol and that two unfired .38 caliber cartridges were taken from his clothing at the hospital after the shooting. There is no satisfactory explanation as to when or how they got there.

The appellant argues that the evidence is insufficient because it does not es-

tablish that he shot Sales or that he aided and abetted the person who actually did the shooting. Despite the evidence that Sales had a pistol and that unfired .38 caliber cartridges were found in his clothing, no contention is made and no inference is warranted that Sales shot himself. It is true that no one identified Abbott as having fired the fatal shot, but even Abbott admits that he was present and fired a pistol into the air to scare the opposition forces, thus furnishing evidence from which the jury could have inferred that he was aiding and abetting, if he was not the principal. Especially is this true if the jury believed the evidence of Abbott's statement made at Powell's store shortly before the shooting. No objections are presented to the instruction which permitted the jury to find Abbott guilty as a principal or as an aider and abettor. The evidence is sufficient to show that Abbott was not "an innocent onlooker," and it was sufficient to sustain the verdict. For a discussion of the rules relating to principal and aider and abettor in this case, see Oldfield v, Commonwealth, Ky., 334 S. W.2d 346.

After the jury had considered the case for a while (the time consumed is not shown), they reported to the court that they were unable to agree on a verdict. Appellant contends that the conduct of the trial judge thereafter amounts to prejudicial coercion.

The record shows that the court inquired as to how they were divided numerically, without regard to guilt or innocence. One juror reported that they stood 10 to 2, and another reported 9 to 3. The court sent the jury back for further deliberation. The jury again reported hung, but three ways this time. To quote the record: " * * * the court stated that a jury had to try the case and that while he didn't want to destroy the free will of the jury they should get together and make a verdict and before the jury retired the last time the court gave the illustration of two goats fighting on a precipice and if they continued to fight both of them would fall over and get killed. In

other words taking an antagonistic view toward each other without getting together and winding up without any results." It is not clear whether the last expression was made to the jury or is by way of explanation of the illustration. After the jury retired the last time, counsel for appellant objected and took an exception to the statement and the procedure.

■ When a jury reports that it is hung, the trial judge may retire the jurors for further consideration of the case and instruct them that they should try to reach a verdict. Taylor v. Commonwealth, 240 Ky. 450, 42 S.W.2d 689; Wiley v. Commonwealth, 246 Ky. 425, 55 S.W.2d 41. The judge may further instruct the jurors not to be obstinate. Miller v. Commonwealth, 240 Ky. 355, 42 S.W.2d 523; 85 A.L. R. 1434. However, the trial judge must refrain from any conduct or language which tends to coerce the jury. Sandefur v. Commonwealth, 143 Ky. 655, 137 S.W. 504; Burnam v. Commonwealth, 283 Ky. 361, 141 S.W.2d 282. The ultimate test of coercion is whether the instruction actually forces an agreement on a verdict or whether it merely forces deliberation which results in an agreement.

■ There is no indication as to the amount of time consumed by the jury in its deliberation or how long it deliberated between reports. The language used by the trial judge does nothing more than impress the jury with the importance of continuing their deliberation in order to reach an agreement. The judge, by his statement, did not indicate his opinion. The action taken did not amount to an abuse of discretion. Criminal Code of Practice, Section 251; McMillan v. Commonwealth, 258 Ky. 354, 80 S.W.2d 24.

In Smith v. Commonwealth, Ky., 321 S. W.2d 786, relied on by appellant, it was said by way of dictum that a trial judge should never inquire of a jury how it stands and that if the jury voluntarily states its numerical division, the judge should say no

more than that the jury should retire and continue its deliberation. However, in the Smith case, the principal objection was directed to the intrusion of the trial judge and counsel into the jury room, which is sufficient in itself to distinguish that case from the present one.

Judgment affirmed.