**Gary STAHL, Appellant,**

v.

**ST. ELIZABETH MEDICAL CENTER, Appellee.**

**No. 95–CA–1477–MR.**

Court of Appeals of Kentucky.

May 2, 1997.

Rehearing Denied July 18 1997.

Daniel W. Crout, Covington, for Appellant.

Elizabeth Graham Weber, Covington, for Appellee.

Before WILHOIT, C.J., and ABRAMSON and EMBERTON, JJ.

### OPINION

ABRAMSON, Judge.

Appellant Gary Stahl appeals from a summary judgment disposing of his counterclaim for fraud, abuse of process and slander of title. Stahl alleges that appellee St. Elizabeth Medical Center fraudulently altered a promissory note after signature and wrongfully filed a notice of lis pendens in an attempt to collect on its claim for hospital services provided to Stahl. Although our analysis of Kentucky law applicable to the promissory note differs from that of the trial court, we are in complete agreement with the trial judge's conclusion that Stahl's counterclaims are foreclosed as a matter of law. Consequently, we affirm the judgment of the Kenton Circuit Court.

Stahl was severely injured in an automobile accident on May 13, 1989, requiring a two-month hospitalization. William White, a financial counselor for St. Elizabeth's, contacted Stahl during the course of his stay at that facility to obtain insurance information and to make arrangements for payment of Stahl's mounting hospital charges. At this initial meeting, Stahl stated that his attorney had advised him not to sign anything regard-

ing financial responsibility and requested that White call his attorney to discuss the matter. Stahl testified that White visited him on two additional occasions before he eventually signed the note at issue. On White's fourth visit to the hospital room in June 1989, White obtained Stahl's signature on a promissory note calling for monthly installments in the amount of $20.00. The total amount of the indebtedness was not stated on the note because Stahl's hospital stay was on-going. On July 15, 1989, Stahl was discharged from the hospital.

In December 1989 a hospital employee completed the promissory note by filling in the amount of the final bill ($31,067.30), the discharge date, and her name as witness for Stahl's signature. A copy of the completed note was mailed to Stahl. Although the hospital maintains that completion of the promissory note in the final amount of the hospital bill was the intent of both parties, Stahl counters that the completion was unauthorized.

Between his discharge in July 1989 and May 1990, Stahl actually made nine of the $20.00 monthly installment payments, five of which were after completion of the note in December 1989. No further payment had been made prior to March 1992, when the hospital instituted an action to recover the $30,947.30 balance, precipitating the counterclaim which is the subject of this appeal.

In his original counterclaim, Stahl alleged that fraud in the completion or alteration of the promissory note after his signature was obtained by Mr. White invalidated both the note and the underlying obligation. Rather than alleging fraud solely as a defense to the note, Stahl sought recovery of both compensatory and punitive damages. He later amended his counterclaim to assert an additional count in response to a May 1993 "Notice of Lis Pendens" which the hospital lodged in the real estate records of the Kenton County Clerk as to residential property Stahl previously owned in Independence, Kentucky. Prior to the filing of the lis pendens, Stahl had conveyed the property to his parents who live in Florida, although he continued to reside at that address. Complaining that the hospital's action in filing the notice of lis pendens constituted abuse of process and slander of title, Stahl sought compensatory and punitive damages. Both parties moved the trial court for summary judgment on the counterclaim.

While these motions were pending, Stahl notified the trial court that his debts had been discharged in bankruptcy. Accordingly, the trial court dismissed the hospital's complaint on August 15, 1994, leaving only the counterclaim for resolution by summary judgment. As to the fraud claim, the trial judge concluded that even if the hospital's actions with respect to completing the promissory note were improper, Stahl had suffered no pecuniary damage. The trial judge also determined that the claims of abuse of process and slander of title were not available under the facts advanced by Stahl.

■ Because this case was decided on a summary judgment motion pursuant to CR 56, our analysis of this appeal begins with recognition of the dictates of *Steelvest v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476 (1991). The trial court was obligated to view the record in the light most favorable to Stahl and to resolve all doubts in his favor. *Id.* at 480. As stated in *Steelvest,* summary judgment is proper only if it appears that it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor. *Id.* at 483. Under the facts of this case, that demanding standard is met.

### THE PROMISSORY NOTE—EFFECT OF FRAUDULENT AND MATERIAL ALTERATIONS

In granting summary judgment on the counterclaim for fraud, the trial court reasoned that even if the hospital's conduct in completing the promissory note was fraudulent Stahl suffered no injury or damage. The court correctly noted that the hospital brought the original action not on the promissory note but on Stahl's underlying obligation to pay the hospital for services rendered. Citing *Hobbs Brothers Drilling Co. v. Cooper,* Ky., 236 Ky. 18, 32 S.W.2d 542 (1930), the trial judge held that whatever effect the hospital's conduct in "altering or

completing the note" had on the promissory note, it did not provide Stahl with grounds for escaping liability on the underlying hospital bill. The court further concluded that having benefited from the hospital's services Stahl suffered no actual pecuniary loss when he made several $20 payments on the allegedly fraudulently altered note since he clearly owed the hospital a considerably larger sum for his two-month stay.

On appeal the parties devote considerable attention to *Hobbs Brothers* and several older Kentucky cases in an effort to establish the effect of an allegedly fraudulent instrument on the underlying obligation. In fact the Uniform Commercial Code ("UCC") as adopted in this Commonwealth[1] addresses this very issue in KRS 355.3–802, a section aptly entitled: "Effect of instrument on obligation for which it is given." Subsection (1) of the section provides:

(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

(a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.

■ In cases such as this where there is no bank involved as drawer, maker or acceptor of the instrument, subsection (1)(b) controls. With respect to this section the leading Kentucky commentators on the UCC have succinctly stated:

Section 3–802(1)(b) also makes another very important statement: "[D]ischarge of the underlying obligor on the instrument also discharges him on the obligation." Thus, any time a discharge on the instru-

ment occurs pursuant to one of the sections mentioned in section 3–601(1) ... the person discharged is also discharged from any liability on the obligation for which the instrument was issued.

Leibson and Nowka, *The Uniform Commercial Code of Kentucky* § 4.3(G) (2d ed.1992). The sections mentioned in § 3–601(1), (KRS 355.3–601), as discharging a party from liability on an instrument include the fraudulent and material alteration provisions of KRS 355.3–407. Thus, in the case of a truly fraudulent and material alteration, the obligor (in this case the maker of the note) is discharged from liability on both the instrument and the underlying obligation to the extent provided in KRS 355.3–407. That section provides in relevant part:

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(a) the number or relations of the parties; or

(b) an incomplete instrument, by completing it otherwise than as authorized; or

(c) the writing as signed by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

■ Assuming as Stahl testified that the hospital completed the promissory note "otherwise than as authorized," the alteration was material under KRS 355.3–407(1). However, discharge occurs under KRS 355.3–407(2)(a) only where the alteration is both fraudulent and material and where the party whose contract was changed (Stahl) does not assent or is not precluded from asserting the defense.

■ Courts in other states have recognized that a fraudulent alteration is one made with "a deceitful and dishonest purpose to

---

**1.** The Kentucky General Assembly adopted Revised Article 3 of the UCC effective January 1, 1997. This case is controlled by the prior version of Article 3 in effect since July 1, 1960.

acquire more than one was entitled to under the note as signed by the maker...." *Bluffestone v. Abrahams,* 125 Ariz. 42, 607 P.2d 25, 28 (App.1979). Misguided behavior alone does not rise to the level of fraud. *Citizen's Nat'l Bank of Willmar v. Taylor,* 368 N.W.2d 913 (Minn.1985) (no fraudulent alteration where bank officials routinely and in good faith renewed overdue notes at current interest rate). The UCC drafters specifically noted in the Official Comments to § 3–407 that "[t]here is no discharge where a blank is filled in the honest belief that it is as authorized." In this case there is strong evidence that the hospital personnel honestly believed they were authorized to complete the note for the full amount of Stahl's final bill. However, this court need not decide whether an issue of material fact exists on that score because even if the alteration was both material and fraudulent Stahl "assented" to the extent of the five $20 installments which he voluntarily paid pursuant to the note after it was allegedly altered.

Although "assent" is not defined in the UCC, a common dictionary definition of the verb is "to express agreement." *Webster's II New Riverside University Dictionary* (1994). On one prior occasion, in *Miller v. Commonwealth,* 241 Ky. 221, 43 S.W.2d 687 (1931), a Kentucky court considered the meaning of "assent" where an individual bank director was indicted for assenting to the receipt of deposits after he knew the bank was insolvent. The defendant insisted that he could not have assented to the receipt of deposits because illness prevented him from being present in the bank to observe personally the transaction at issue. The court rejected this notion, finding that where the bank was "kept open for business under his authority and with his knowledge, he assents to the receiving of deposits by those employed for that purpose, although he may have no personal knowledge of the fact that such deposits were actually received." 43 S.W.2d at 688. Certainly, Stahl's affirmative act of paying several installments on the promissory note satisfies the standard dictionary and available judicial definitions of the word "assent."

Moreover, our decision is consistent with § 3–407 cases from other jurisdictions construing "assent." In *Bluffestone v. Abrahams, supra,* the court held that payment of a note with knowledge of the alterations would constitute assent to the altered note. In that case, the alterations changed a demand note to one payable monthly and provided for attorney's fees if suit were filed by the payee. There was no change in the amount of the note. The appellate court held that assent to the alterations could be express or implied by the acts of the parties. Payment after alteration could be construed as assent if the payment were clearly made with knowledge of the alteration. In *Bluffestone* the court found that there was no evidence that the maker ever had possession of the altered note and that assent to the attorney's fees provision could not be implied from the mere fact the maker made monthly payments. In this case the record clearly reflects that a copy of the note was mailed to Stahl who never disputed receiving it and who obviously made payments "pursuant to the promissory note" as he readily acknowledged in his deposition. Under these circumstances, Stahl clearly assented to the extent of the payments he actually made. Whether he assented to the full amount of the allegedly altered note is an issue this court need not address since the complaint was dismissed by virtue of Stahl's bankruptcy and the hospital cannot attempt to enforce the unpaid balance of the note.

▆▆▆ Having concluded that no discharge occurred to relieve Stahl of his liability on the note for the payments he actually made, we, on admittedly different legal analysis, concur with the trial court's conclusion that Stahl suffered no injury or damage necessary to support his fraud claim. As the trial court correctly held, "one seeking to recover on the basis of fraud must suffer an actual pecuniary loss." *See, Johnson v. Cormney,* Ky. App., 596 S.W.2d 23 (1979); *Sanford Construction Co. v. S & H Contractors,* Inc., Ky., 443 S.W.2d 227 (1969). Stahl claims that the five $20 payments he made after the promissory note was completed constitute his loss and that he is entitled on remand to recover compensatory and punitive damages. The foregoing analysis of the parties' dealings

pursuant to the note precludes as a matter of law any finding that Stahl suffered an actual pecuniary loss. Simply stated, Stahl was legally obligated on the allegedly fraudulent note at least to the extent he assented by payment. Payment of sums he was legally obligated for does not constitute the pecuniary loss necessary to sustain a fraud claim. Under these circumstances, it would not be possible for him to adduce evidence on remand warranting a judgment in his favor. *Steelvest,* 807 S.W.2d at 483. Accordingly summary judgment in favor of the hospital on the fraud count of the counterclaim is affirmed.

### THE NOTICE OF LIS PENDENS— ABUSE OF PROCESS AND SLANDER OF TITLE

■ Stahl's abuse of process claim is inescapably deficient as a matter of law. Abuse of process is the "irregular or wrongful employment of a judicial proceeding." *Bonnie Braes Farms, Inc. v. Robinson,* Ky.App., 598 S.W.2d 765, 766 (1980). "The essential elements of the tort include (1) an ulterior purpose and (2) a wilful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* In *Bonnie Braes,* this court noted that because judicial process necessarily involves acts of a court, a lis pendens notice filed pursuant to statute without intervention of any judicial authority does not qualify as a form of process. Without judicial process, there can be no abuse. *Id.* Thus, the trial court in this case properly concluded that the hospital was entitled to judgment as a matter of law on Stahl's abuse of process claim.

■ The *Bonnie Braes* decision is also instructive with respect to the slander of title claim. In that case, this court affirmed an order dismissing abuse of process and slander of title claims where a creditor filed a lis pendens notice asserting an interest in farm property prior to obtaining a final judgment against the owner of the property. As the court noted, the pending litigation could not (as wrongfully stated in the lis pendens) affect the right, title and interest to the farm property until a judgment was obtained and a levy of execution occurred. The *Bonnie*

*Braes* court held that a party claiming slander of title must plead and prove that the alleged slanderer "knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result." 598 S.W.2d at 766.

Despite the presence of disparagement in that case, dismissal was appropriate because of the absence of any special damages. The court noted that the special damage required may consist of either "a loss by the plaintiff of a sale of his property or a diminution in its fair market value." *Id.* citing *Continental Realty Co. v. Little,* 135 Ky. 618, 117 S.W. 310 (1909). Because the owner of the farm property in *Bonnie Braes* had sold a portion of the property for the full contract price despite the presence of the lis pendens and alleged no other damage, the court found he had no prospect of showing the necessary special damages.

■ In this case Stahl does not, and did not at the time of the filing of the lis pendens, have title to the property. This fact alone should preclude any finding of a cause of action as title to the property is a necessary element of the tort. Additionally, where a third party or parties (in this case Stahl's parents) have already purchased the property for the full contract price it would be impossible for the former owner to show a loss of sale or a diminution in value affecting him as required by Kentucky law. Accordingly, Stahl's slander of title claim fails as a matter of law.

For the foregoing reasons, the trial court's grant of summary judgment was proper and we affirm.

All concur.