MODIFIED: MARCH 13, 2008
RENDERED: FEBRUARY 21, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2005-SC-000963-MR

WILLIAM MARK BELL        APPELLANT

ON APPEAL FROM LARUE CIRCUIT COURT
V.        HONORABLE THOMAS McDONALD, SPECIAL JUDGE
NO. 01-CR-000059

COMMONWEALTH OF KENTUCKY        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>REVERSING</u>**

Following a jury trial, the Larue Circuit Court convicted William Mark Bell of five counts of sexual abuse in the first-degree and one count of sodomy in the first-degree. He appeals the conviction as a matter of right. Ky. Const. §110(2)(b). For the reasons set forth herein, we reverse the judgment.

The allegations against Bell were brought by K.T., his girlfriend's daughter. The incidents of alleged sexual abuse occurred over a three-year period during which K.T. lived in a small trailer with her mother, Tammy Despain, and C.T., her sister. Bell also lived in the trailer with D.B., his daughter by Despain.

According to K.T., Bell began to rape and sodomize her when she was in the second grade. She testified that as the rest of the family slept, Bell would remove her from the bunk beds that she shared with her stepsister, and take her into the living room. K.T. stated that Bell would give her pills to keep her awake. These incidents

allegedly occurred "most nights" and continued until the summer after her third grade school year. During a visit with her biological father, Keith Tennyson, K.T. confided the abuse to her stepmother, Lisa Tennyson. Ms. Tennyson contacted authorities and K.T. was thereafter removed from Bell's home. Bell took the stand in his own defense and denied all the charges.

K.T.'s credibility at trial was challenged by her numerous prior allegations of abuse. K.T.'s teacher and a guidance counselor testified that social services had been contacted on multiple occasions, following allegations made by K.T. against both Bell and her biological father. A social worker with the Cabinet for Families and Children explained that no actions had been taken following these accusations because they were deemed unsubstantiated and problematic due to K.T.'s changing stories. The Commonwealth attempted to explain K.T.'s varying allegations by her testimony that Bell threatened to kill her if she did not accuse her biological father of the abuse. K.T. also testified that Bell killed her dog to scare her, though credible testimony was presented that the dog was euthanized for other reasons.

As is frequently the case in ongoing sexual abuse trials, little physical evidence corroborated K.T.'s allegations. On one occasion, after K.T. made an allegation against her father, Bell and Despain took K.T. to Hardin Memorial Hospital for a physical examination. The exam revealed that K.T.'s hymen was intact, and that there was no evidence of tears or lacerations. However, a later examination by another child abuse expert, Dr. Betty Spivak, revealed a slight healing tear to the hymen. The Commonwealth explained the discrepancy by pointing out that Dr. Spivak had conducted a more thorough examination of K.T. with specialized equipment unavailable at Hardin Memorial Hospital.

2

The jury was instructed on five counts of rape, with five counts of sexual abuse as lesser-included offenses, and five counts of sodomy. Ultimately, the jury returned a verdict of guilt on five counts of sexual abuse in the first-degree and one count of sodomy in the first-degree. Bell was acquitted on the other charges. The jury recommended a sentence of five years as to each sexual abuse count and twenty-five years as to the sodomy count, to be run concurrently. The trial court imposed the jury's recommended sentence. Bell now appeals to this Court as a matter of right.

Bell argues that the trial court coerced the jury's guilty verdict. This issue is unpreserved and Bell requests palpable error review pursuant to RCr 10.26. Palpable errors which affect the substantial rights of a party may be considered on appellate review, even when not properly preserved, when it is determined that manifest injustice has resulted from the error. An error is deemed non-prejudicial when, upon consideration of the entire case, the reviewing court does not believe that there is a substantial possibility that the result of the trial would have been any different absent the error. Cochran v. Commonwealth, 114 S.W.3d 837 (Ky. 2003).

A brief recitation of the record is warranted for full understanding of the issue presented for review. The jury was instructed and began deliberations at 3:30 p.m. About three hours later, the trial judge brought only the jury foreperson into the courtroom, with all counsel and the defendant present. After first stating that he did not want to hear any details of what was going on in the jury room, the trial court asked the foreperson if the jury was deadlocked or having difficulty reaching a verdict. The trial court then inquired if it would be necessary to order dinner, and the foreperson replied that it would be. An hour and a half later, absent any indication whatsoever that the jury was deadlocked, the trial court brought the entire jury into the courtroom and delivered

3

an Allen charge pursuant to RCr 9.57. The jury was then sent back out to deliberate further.

One hour later, now approaching 9:00 p.m., the trial court called the foreperson alone into chambers. Also present in chambers was the Commonwealth's Attorney, defense counsel, Bell, the court's clerk, and a deputy sheriff. Initially, the trial judge again stated that he did not want to hear any of the particulars of the deliberations. But the judge noted that the jury had been deliberating for six hours and asked whether further deliberations would be fruitful. The foreperson, visibly uncomfortable, replied that he thought the jury could use "just a little more time." He also explained that it was an "unusual situation for him," and that he was not used to "talking like this." He explained that the jury believed it was a "hard decision" involving "a lot of issues," but that they were making progress. Finally, the foreperson twice apologized for "how long it is taking us." The trial court replied that no apology was necessary and that deliberations could continue if necessary. The foreperson again explained that he believed the deliberations were progressing well and that they would do their best. The foreperson returned to the deliberation room and a verdict was reached less than twenty minutes later.

The trial court's behavior and actions during the jury's deliberations were improper and unduly coercive. By the express terms of RCr 9.57, an Allen charge is properly delivered when "a jury reports to a court that it is unable to reach a verdict." Here, the jury made no such report to the trial court. Furthermore, the circumstances of the deliberations in no way justified delivery of an Allen charge. Considering the complexity of the case, the conflicting stories presented by multiple witnesses, and the fact that the jury was considering over ten possible criminal counts, there was no cause

4

for concern that the jury was deadlocked after less than five hours of deliberation. The evidence against Appellant in this case, while certainly sufficient for a conviction, was not that overwhelming. It was virtually a "he said, she said" type of case.

More egregious is the fact that the trial court brought the foreperson, alone, into chambers to inquire about the progress of deliberations. The fact that the foreperson was brought into a small office with the defendant sitting a few feet away created an unduly coercive environment. The trial court should never isolate one juror from the rest of the jurors for questioning on a matter which pertains to them all. Though the trial judge stated several times during the brief meeting that he did not want to know the details of the deliberations, the goal of the meeting was clear – to determine how much longer it would take the jury to reach a verdict. This being the trial court's third contact with the jury during its deliberations, any reasonable juror, placed in such a situation, would have received the clear and distinct impression that the trial court was concerned or surprised that deliberations had continued for as long as they had. A reasonable juror would have gotten the clear message from the judge that it was "time for a verdict." The character of the foreperson's responses and his repeated apologies made it equally apparent that he had received such a message.

When analyzing whether a trial court has coerced a jury verdict, this Court has explained that the "ultimate test of coercion is whether the instruction actually forces an agreement on a verdict or whether it merely forces deliberation which results in an agreement." Abbott v. Commonwealth, 352 S.W.2d 552, 554 (Ky. 1961). We analyze the totality of the circumstances. The time lapse between the alleged coercive comment and the verdict may be relevant as part of the totality of circumstances, though not decisive. Commonwealth v. Mitchell, 943 S.W.2d 625, 628 (Ky. 1997).

5

"[S]tatements which merely impress upon the jury the propriety and importance of coming to an agreement do not rise to the level of reversible error." Mitchell, 943 S.W.2d at 628. At the same time, however, it must be remembered that "the words and acts of a presiding judge have great weight with juries, and for that reason we have often written that he should at all times be cautious in what he says or does in the presence of the jury." Burnam v. Commonwealth, 283 Ky. 361, 141 S.W.2d 282, 284 (1940).

Looking at the totality of the circumstances in the present case, we are compelled to conclude that the trial court's behavior and statements to the jury amounted to coercion. The trial court's delivery of an Allen charge absent any indication of a deadlock was unwarranted. Such behavior leaves any reasonable juror with the impression that the trial court had expected a verdict already. Moreover, by engaging in the highly improper behavior of bringing the foreperson alone into chambers, the trial court again sent the distinct message that the verdict was taking too long. Also, the foreperson stated that they were having trouble due to the complexity of the charges, but making progress. He gave every indication that further deliberations would be fruitful. Nonetheless, the jury returned a verdict little more than fifteen minutes later. This circumstance strongly indicates that the foreperson returned to the jury room and expressed his belief that the trial court wanted a verdict promptly, and that one was promptly reached.

The trial court's overall conduct and repeated interaction with the jury during its deliberations constituted an improper invasion into the deliberations of the jury. When the province of the jury has been invaded, the validity of the verdict is completely

6

undermined and such error cannot be deemed harmless. Accordingly, the judgment of the Larue Circuit Court is hereby reversed.

Because the judgment has been reversed for the foregoing reasons, we will address only those additional assignments of error that are likely to recur upon retrial. Terry v. Commonwealth, 153 S.W.3d 794, 797 (Ky. 2005).

Bell complains that evidence of his marijuana use was improperly admitted in violation of KRE 404(b). During the testimony of social worker, Ann Cash, the Commonwealth inquired if she knew anything about the prescription pills that Appellant allegedly gave K.T. during the abuse. Ms. Cash responded that she did not know anything about the prescription pills, but then gave substantial testimony regarding Appellant's marijuana use around his children. While K.T.'s testimony linked the prescription pills to the sexual abuse claims, the Commonwealth presented absolutely no evidence tying Appellant's marijuana use to the charged offenses. For this reason, Ms. Cash's testimony regarding marijuana use was irrelevant and improperly admitted. KRE 402; KRE 404(b). On retrial, such testimony should be prohibited.

Next, Bell argues that because the jury instructions failed to identify each specific incident of abuse, they are unsupported by the evidence, deny him a unanimous verdict, and violate his right against double jeopardy. The jury was instructed on five counts of rape in the first degree, five counts of sexual abuse as lesser-included offenses, and five counts of sodomy in the first degree. All instructions on each offense were verbatim. That is, each rape instruction was identical, each sexual abuse instruction was identical, and each sodomy instruction was identical. Bell's complaint centers on the fact that each set of instructions contains no differentiating factors whatsoever and does not attempt to identify each particular instance of abuse.

7

The problem herein does not involve the sufficiency of the evidence. Cf. Miller v. Commonwealth, 77 S.W.3d 566 (Ky. 2002). The Commonwealth, during its opening and closing arguments, identified five distinct instances during which K.T. was allegedly sodomized and raped. K.T.'s testimony provided sufficient evidence as to each incident to overcome a motion for a directed verdict.

The wording of the instructions, however, calls into question the unanimity of the verdict. A criminal defendant, of course, is entitled to a unanimous verdict. Ky. Const. §7, as interpreted in Cannon v. Commonwealth, 291 Ky. 50, 163 S.W.2d 15 (1942); RCr 9.82(1). When the evidence is sufficient to support multiple counts of the same offense, the jury instructions must be tailored to the testimony in order to differentiate each count from the others. While the Commonwealth differentiated the offenses during its closing arguments, there is nothing in the written instructions to distinguish each count of rape, sexual abuse and sodomy.

It was error for the trial court in this case to deliver multiple instructions that failed to distinguish in some fashion each incident of rape, sexual abuse, or sodomy. We note that a simple parenthetical notation within each instruction identifying the location of the offense (i.e., in K.T.'s living room), or the general time period of the offense (i.e., before K.T. confessed the abuse to Ms. Tennyson), could have easily cured this problem. The trial court might also have used a heading or label for each instruction to differentiate the various counts.

Though we have reversed Bell's convictions for sexual abuse, we note that the error in the instructions with respect to these convictions would have been harmless. The jury was instructed on five counts of rape, with sexual abuse as a lesser-included offense. The Commonwealth, in its closing, identified the five distinct incidents.

8

Because the jury ultimately found Bell guilty of all five counts of sexual abuse, it can be rationally and fairly deduced that each juror believed Bell was guilty of the five distinct incidents identified by the Commonwealth.

The single conviction for sodomy presents a different scenario. The Commonwealth argues that, because the jury ultimately found Bell guilty of only one count of sodomy, they must have differentiated each instance and agreed upon one that had occurred. Satisfaction of Kentucky's unanimity requirement cannot be based on this type of conjecture. Rather, it must be evident and clear from the instructions and verdict form that the jury agreed, not only that Bell committed one count of sodomy, but also exactly which incident they all believed occurred. Otherwise, Bell is not only denied a unanimous verdict, but is also stripped of any realistic basis for appellate review of his conviction for sodomy. In other words, without knowing which instance of sodomy is the basis of his conviction, Bell cannot rationally challenge the sufficiency of the evidence on appeal. Accordingly, had Bell's sodomy conviction not already been reversed for the foregoing reasons, the instructional error explained above would have constituted palpable, reversible error.

Finally, to avoid reversible error on retrial, we address the testimony of the investigating social worker, Ann Cash, who interviewed K.T. concerning the sexual abuse allegations. Over objection by defense counsel, Cash was permitted to testify that K.T. was "spontaneous" and "unrehearsed" in telling her story, as opposed to alleged victims who sound "rehearsed" or "canned." Also, over objection, Cash was permitted to testify that K.T.'s demeanor during the interview, such as anger and sadness, was "consistent with sexual abuse victims."

We have consistently held that this type of testimony in cases involving allegations of sexual abuse is inadmissible on a number of grounds. First, it is well settled that a witness may not vouch for the credibility of another witness. Stringer v. Commonwealth, 956 S.W.2d 883, 888 (Ky. 1997); Hellstrom v. Commonwealth, 825 S.W.2d 612, 614 (Ky. 1992); Hall v. Commonwealth, 862 S.W.2d 321, 323 (Ky. 1993). Clearly implicit in Cash's description of K.T. as "spontaneous" and "unrehearsed," as opposed to alleged victims who sound "rehearsed" or "canned," was her opinion that because of K.T.'s manner of speaking, she was being truthful.[1] Accordingly, this testimony was improper vouching and inadmissible. Second, we have held that psychologists and social workers are not qualified to express an opinion that a person has been sexually abused. Hall, 862 S.W.2d at 322; Hellstrom, 825 S.W.2d at 614. Third, we have consistently held as inadmissible, evidence of a child's behavioral symptoms or traits as indicative of sexual abuse (sometimes referred to as "Child Sexual Abuse Accommodation Syndrome") on grounds that this is not a generally accepted medical concept. Brown v. Commonwealth, 812 S.W.2d 502 (Ky. 1991) (social worker's testimony that child's behavior "consistent with abuse" was reversible error), overruled on other grounds by Stringer v. Commonwealth, 956 S.W.2d 883 (Ky. 1997). See also Hellstrom, 825 S.W.2d at 613-14; Hester v. Commonwealth, 734 S.W.2d 457 (Ky. 1987); Lantrip v. Commonwealth, 713 S.W.2d 816 (Ky. 1986); Bussey v. Commonwealth, 697 S.W.2d 139 (Ky. 1985). Accordingly, Cash's testimony that K.T.'s demeanor during the interview, such as anger and sadness, was "consistent with sexual abuse victims" was inadmissible as well.

---

[1] The trial court appeared to believe this testimony was admissible as long as Cash did not explicitly state that, in her opinion, K.T. was truthful. However, Cash's opinion that a person who sounds "spontaneous" and "unrehearsed" is truthful was clearly implicit in her testimony. Therefore, this testimony runs afoul of the law.

10

Another assignment of error also likely to occur upon retrial involves the testimony of a teacher, Diana Cattrell, that K.T. was a good and "very honest" child. Appellant concedes the error is unpreserved. Cattrell's statement that K.T. is very honest constituted improper vouching for K.T.'s credibility. However, as the case is being sent back for retrial, it is not necessary to consider whether this rose to the level of palpable error.

Again, based upon the foregoing, the judgment of the Larue Circuit Court is hereby reversed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601-1133


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Clint Evans Watson
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204

# Supreme Court of Kentucky

2005-SC-000963-MR

WILLIAM MARK BELL                                                    APPELLANT

V.

ON APPEAL FROM LARUE CIRCUIT COURT
HONORABLE THOMAS McDONALD, SPECIAL JUDGE
No. 01-CR-000059

COMMONWEALTH OF KENTUCKY                                      APPELLEE

## ORDER OF CORRECTION

Appellant's motion for modification of the Opinion is granted. The Memorandum Opinion Of The Court rendered February 21, 2008, is modified on its face by substitution of the attached pages 1 and 11 in lieu of pages 1 and 11 of the original opinion. Said modification does not affect the holding of the original Memorandum Opinion of the Court.

ENTERED: March 13, 2008

_____
CHIEF JUSTICE