# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2014-SC-000176-MR

RANDALL E. BANKS                                                          APPELLANT

ON APPEAL FROM HART CIRCUIT COURT
V.                          HONORABLE JOHN DAVID SEAY, JUDGE
NO. 12-CR-00030

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Randall E. Banks, appeals from a judgment of the Hart Circuit Court convicting him of two counts of first-degree rape; three counts of first-degree sodomy, three counts of first-degree sexual abuse, and of being a first-degree persistent felony offender. He was sentenced to imprisonment for forty years.

Appellant contends that he is entitled to relief for the following reasons: (1) the trial court abused its discretion by failing to conduct a hearing regarding possible witness tampering during his trial when (a) members of a victims' support group had communications with the victim/witness as she awaited her turn to testify and (b) the Commonwealth's lead detective used gestures to communicate with the victim/witness as she testified; (2) error occurred at trial when two witnesses were permitted to give testimony bolstering the credibility of the victim/witness; (3) the trial court abused its

discretion by allowing the victim's treating physician to give general expert opinion testimony without evidence qualifying the witness as an expert; (4) that Appellant was unfairly prejudiced when improper incest instructions, duplicative of the rape instructions, were submitted to the jury; and (5) palpable error occurred as a result of prosecutor's misconduct in his closing argument. We find no merit to Appellant's claims and, therefore, we affirm the judgment of the Hart Circuit Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with forty sexual-related crimes, including rape, incest, and sexual abuse that were allegedly committed against his daughter, Sharon,[1] while she was under twelve years old. Appellant was also charged with being a persistent felony offender. Several of the sexual charges were dismissed before trial. Witnesses for the Commonwealth included Sharon, who described the various crimes committed by Appellant, and Dr. Kelly Kries, who examined Sharon after the allegation of rape and sexual abuse came to light. Appellant denied all the charges.

At the conclusion of the trial, the jury was instructed that it could find Appellant guilty on two counts of first-degree rape; three counts of first-degree sodomy; three counts of first-degree sexual abuse; and five counts of incest; and of being a first-degree persistent felony offender. The jury convicted Appellant on all charges. However, after the return of the verdicts, and based

---

[1] "Sharon" is a pseudonym we have employed to preserve the anonymity of the complaining witness, a minor.

2

upon a perceived double jeopardy violation, the trial court dismissed the five incest charges.

## II. THE VICTIM-WITNESS'S INTERACTION WITH OTHERS IN AND OUT OF THE COURTROOM

Before the trial began, the rule on separation of witnesses, KRE 615, was invoked. Later, during the trial, Appellant twice complained of improper communications with Sharon in what he regards as violations of the rule on separation of witnesses and improper attempts to influence her testimony. First, Appellant claimed that members of a victims' advocacy group known as "Bikers Against Child Abuse" (the Bikers) had engaged in conversations with Sharon while she waited to testify. Second, Appellant complained that while Sharon testified, the lead investigator in the case, Detective Laura Isenberg, who was present in the courtroom, tried to influence Sharon's testimony by silently nodding to her. He brought both issues to the trial court's attention but the court did not conduct a formal evidentiary hearing on them.

When Sharon was called to the witness stand, she was wearing a sticker on her shirt which read "Bikers Against Child Abuse." The trial judge noticed the sticker and briefly recessed the proceedings. During the recess, Sharon was directed to remove the sticker and the judge admonished the audience in the court room as follows:

> I am going to order that you not have any more contact with the Commonwealth's witness; and I don't know if there has been any or not, except I saw one gentleman go out of the courtroom when we were going to call [the victim] as a witness.

In the subsequent discussion about the matter, the judge asked if defense counsel was aware of any violations of the separation of witnesses rule. Defense counsel responded that "since the beginning of this trial the Bikers have been in the grand jury room with the witnesses" and that "we know they have been speaking to them and talking to them." Defense counsel asked for no further relief. Notably, he did not request or suggest that a hearing be held to determine what contacts Sharon had with other persons after the invocation of KRE 615. The trial resumed.

As Sharon's testimony proceeded, she could be seen silently mouthing words, as if in tacit communications with someone in the courtroom. Detective Isenberg, who was seated at the counsel table with the prosecutor, was nodding to Sharon. That conduct prompted Appellant's counsel to approach the bench and move for a mistrial. He now contends that the trial court erred in denying the mistrial.

With respect to the Bikers, Appellant characterizes their contact with Sharon as a violation of the rule on separation of witnesses. He cites to *Ballard v. Commonwealth*, 743 S.W.2d 21, 22 (Ky. 1988), for the proposition that an evidentiary hearing was necessary for a proper determination of whether that rule was violated. When *Ballard* was decided, our rule for separation of witnesses was RCr 9.48, which has since been repealed and replaced by KRE 615.

KRE 615, which is nearly identical to the former rule, RCr 9.48, provides that "[a]t the request of a party the court shall order witnesses excluded so that

4

they cannot hear the testimony of other witnesses and it may make the order on its own motion."[2] Like its predecessor, KRE 615 provides for the "separation" of witnesses, not the "sequestration" of witnesses. It does not prevent communication or interaction between witnesses and other persons outside the courtroom. *Woodard v. Commonwealth*, 219 S.W.3d 723, 728 (Ky. 2007) ("[T]he rule requires only the separation of witnesses so that they can not [sic] hear testimony in the courtroom.")[3] There is no allegation that Sharon was communicating with other witnesses or that the Bikers were relaying to Sharon the testimony of other witnesses. As such, we are persuaded that Appellant's reliance upon the rule for separation of witnesses is misplaced.

It appears that the Bikers were present to offer moral support and encouragement to Sharon, whom they apparently regarded as a victim of child abuse. There was no indication to the contrary that would have compelled the trial court to undertake a more extensive evidentiary inquiry into the matter. The action of the Bikers simply does not implicate KRE 615 and does not suggest anything that might compel the trial court to inquire into possible witness tampering.

More significantly, however, despite his awareness of the Bikers and their cause, Appellant never requested a more formal evidentiary hearing on

---

[2] RCr 9.48 provided: "If either a defendant or the commonwealth requests it, the judge may exclude from the hearing or trial any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses. This provision shall not apply to the parties to the proceeding."

[3] Overruled on other grounds by *Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010).

5

the matter. Under a loose definition of the term, it can fairly be said that a "hearing" *was* held inasmuch as the trial court conducted a brief inquiry into the matter during the recess taken in connection with the sticker. We perceive no error in the trial court's handling of this matter.

In connection with gesturing between Sharon and Detective Isenberg that occurred during Sharon's testimony, Appellant asked the trial court to declare a mistrial. "A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002). "The standard for reviewing the denial of a mistrial is abuse of discretion." *Id.*

When the incident was brought to the trial court's attention, the trial court denied Appellant's request for a mistrial and directed the prosecutor to have the detective stop gesturing to the witness. We agree with Appellant that this voiceless communication between an officer of the prosecution and a testifying witness was improper. We note Appellant's reliance upon *Sharp v. Commonwealth*, 849 S.W.2d 542, 547 (Ky. 1993). In *Sharp*, we reversed a conviction partly because under the attendant circumstances, improper courtroom gesturing between a victim/witness and "a self-described friend of the family" warranted a mistrial. Here, the improper interaction was far more limited in both scope and duration, and falls far short of the prejudicial conduct decried in *Sharp*. We are convinced that the trial court's handling of the matter was well within the bounds of proper discretion. *Matthews v.*

*Commonwealth*, 163 S.W.3d 11, 17 (Ky. 2005) (A mistrial is necessary only "if a harmful event is of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial effect could be removed in no other way."). This assignment of error does not warrant reversal of Appellant's convictions.

## III. VOUCHING/BOLSTERING THE TESTIMONY OF ANOTHER WITNESS

Appellant contends that witnesses for the Commonwealth, Dr. Kelly Kries and one of Sharon's relatives, engaged in improper attempts to vouch for the truthfulness of Sharon's testimony. Appellant concedes that this issue is not preserved and requests palpable error review pursuant to RCr 10.26.

Dr. Kries is a physician who treated Sharon after the allegations of sexual abuse came to light. Appellant cites the following testimony by Dr. Kries:

> **Prosecutor:** The fact that you observed these things, [was it] significant to you [that it] included the vagina as well as the anus?
>
> **Dr. Kries:** In combination with the *clear, concise detailed history that was consistent*, the history that [Sharon] gave of someone putting their privates in her front side and her backside made me very suspicious that her findings could be due to sexual abuse.

The prosecutor then asked Dr. Kries if the history given by a patient was significant; Dr. Kries replied, "Absolutely." When asked how the importance of the patient history compares to the importance of her physical findings, Dr. Kries replied:

> I would consider the history the most important part of what I do. My physical exam findings support what I do or they lend credence to the history, but the history, of everything I do, is the most important.

In addition to that testimony, Appellant argues that improper bolstering occurred when a relative of Sharon testified that she undertook certain actions in response to Sharon's revelation of abuse "because I believe what she [Sharon] told me." Appellant contends that the prejudicial effect of the foregoing bolstering was amplified by the prosecutor's statements during his closing argument that:

> [T]his comes down to two things, [Sharon's] testimony and Dr. Kelly Kries' testimony. I am not going to go over everybody else's testimony because that's what's really important, those two people . . . the rest of the testimony was just background."

It is well-settled that a witness cannot vouch for the truthfulness of another witness. *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011) (citing *Stringer v. Commonwealth*, 956 S.W.2d 883, 888 and *Bell v. Commonwealth*, 245 S.W.3d 738, 745 (Ky. 2008)[4]). In the context of child sex abuse cases, we have repeatedly held that no expert, including a medical doctor, can vouch for the truth of the victim's out-of-court statements. *Id.* (citing *Hall v. Commonwealth*, 862 S.W.2d 321, 322–23 (Ky. 1993) (collecting cases) and *Bell*, 245 S.W.3d at 744–45)). Indeed, this rule applies even when a witness *indirectly* vouches for the truth of the victim's statement. *Id.* In *Bell*, this Court stated that it was error to allow a social worker to testify that a child sounded "spontaneous" and "unrehearsed" in describing sexual abuse. *Bell*, 245 S.W.3d at 744–45. Although the social worker in *Bell* did not literally say that she believed the child to be truthful, her opinion about the child's

---

[4] *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008).

8

truthfulness was implicit in her statements, and so her testimony was impermissible bolstering. *Bell* at 745 n. 1; *Hoff* at 376.

Here, the testimony of Sharon's relative that she believed what Sharon had told her directly violated our rule. However, this instance of bolstering was fleeting and not otherwise overemphasized. Similarly, Dr. Kries's testimony about the importance of patient history was, at most, bolstering in a very indirect sense.[5] Of greater concern is Dr. Kries's testimony that Sharon provided a "clear, concise detailed history that was consistent," which projects the clear implication that Dr. Kries believed the victim's story.

The prohibition against bolstering the testimony of another witness was clearly violated in this case. However, given the fleeting and indirect nature of the bolstering testimony, we are satisfied that there is no reasonable probability that they influenced the verdict or affected the outcome of the case, and did not so fundamentally affect the proceedings so as to threaten Appellant's right to due process of law. "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

---

[5] It is not clear, and it would be interesting to know, if Dr. Kries's assessment of the relative "importance" of the patient history, which is a rather subjective source of information, and the more objective physical findings, was from her perspective as a treating physician or from her perspective as a forensic examiner. It would seem that the relative "importance" of these sources of information may differ, depending upon whether the examiner's purpose is to restore the patient's health or to investigate a potential crime.

Furthermore, "[a] party claiming palpable error must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Chavies v. Commonwealth*, 374 S.W.3d 313, 322–23 (Ky. 2012). Because Appellant has failed to make this showing, we conclude that he is not entitled to relief under the manifest injustice standard.

## IV. DR. KELLY KRIES'S OPINION TESTIMONY

Appellant next argues that error occurred when Dr. Kries was permitted to testify beyond her role as a treating physician and testify as an expert without having first been formally qualified pursuant to KRE 702. He specifically relies upon this Court's conclusion in *Commonwealth v. Christie*, 98 S.W.3d 485, 489 (Ky. 2002), where we said that before admitting expert testimony, "the trial court [must] assess whether the proffered testimony is both relevant and reliable." We concluded in *Christie* that "[f]ailure to make a determination on the admissibility of expert testimony without an adequate record is an abuse of discretion by the trial court."

KRE 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if scientific, technical, or specialized knowledge will assist the trier of fact. Appellant focuses his objection exclusively upon the portion of Dr. Kries's testimony relating to her explanation of why she perceived no inconsistency between Sharon's testimony that Appellant had subjected her to vaginal

10

intercourse and Dr. Kries's physical findings that there was no damage to Sharon's hymen. In that context, the following exchange took place:

> **Prosecutor:** "Is [an intact hymen] something you would expect to find?"
>
> **[Appellant's objection to this question is overruled.]**
>
> **Prosecutor:** "Is that something you would expect to find in a child that is alleging that someone has stuck their private in their front side."
>
> **Dr. Kries:** "Yes. The majority of cases *I have seen,* the hymen is normal."
>
> **Prosecutor:** "What does that mean?"
>
> **Dr. Kries:** "That sexual contact occurred but the penis did not transect the hymen."

Appellant argues that in this colloquy Dr. Kries was permitted to stray from her limited role as a treating physician, in which she could properly express opinions drawn from her examination of the victim, and was then permitted to venture into the realm of an expert witness expressing opinions not based upon her own observations and examination of the patient. Appellant contends that Dr. Kries's testimony as to what she "would expect to find" in connection with a victim of sex abuse, and her opinion that "in the majority of cases I have seen, the hymen was normal," was expert testimony under KRE 702 for which the trial court must evaluate the witness's qualifications.

We are not persuaded by Appellant's argument. We begin by referring to this qualification in *Christie*:

11

This assessment [of expert opinion testimony] does not require a trial court to hold a hearing on the admissibility of the expert's testimony. But a trial court should only rule on the admissibility of expert testimony without first holding a hearing "when the record [before it] is complete enough to measure the proffered testimony against the proper standards of reliability and relevance."

*Id.* at 488 (citations omitted).

Although the trial court did not formally evaluate Dr. Kries's credentials to determine her level of expertise, the evidence established that she was a licensed medical doctor with substantial experience in treating and examining sexually-active or sexually abused girls. "The degree to which a witness may give an opinion, of course, is predicated in part upon whether and the extent to which the witness has sufficient life experiences that would permit making a judgment as to the matter involved." *Mondie v. Commonwealth,* 158 S.W.3d 203, 212 (Ky. 2005) (quoting Underwood & Weisenberger, *Kentucky Evidence 2004 Courtroom Manual,* 343, n. 24 (Anderson Publishing Co. 2003)).

We believe it was readily apparent without need of a hearing that Dr. Kries was qualified to express the opinions that are the source of Appellant's complaint. There was no violation of KRE 702. Dr. Kries's testimony that the victim's hymen was not transected was rationally based upon her direct observation and perceptions. In effect, Dr. Kries's opinion about how there could have been intercourse without damage to the hymen amounts to a self-evident tautology, and thereby added little substance to the evidence. Her opinion was that an intact hymen was consistent with intercourse if "the penis did not transect the hymen." That is the equivalent of saying that "the hymen

12

was not damaged during intercourse because the penis did not damage it."
Even if the admission of such an "opinion" had been error, the error was
harmless because the opinion was essentially meaningless.

Finally, Dr. Kries's opinion that in cases of sexual abuse she would
expect to find that "the hymen is normal" was limited to her personal
experience and observation. She said that was true in "the majority of cases *I
have seen.*" The dispositive element of this exchange is that Dr. Kries limited
her answer to describing cases she had personally seen. Thus, with this
testimony, Dr. Kries did not testify beyond the bounds of her qualifications
derived from her education and professional experience which were subject to
challenge on cross-examination. As such Appellant is not entitled to relief
under this argument.

## V. PRESENTATION OF INCEST INSTRUCTIONS TO THE JURY

The instructions presented to the jury at the conclusion of the guilt
phase of the trial included five counts of incest. The jury returned a verdict of
guilty on each of those counts. Afterwards, the trial court *sua sponte*
determined that the incest counts, in combination with some of the rape
counts, resulted in a double jeopardy violation under the "same elements" test

as outlined in *Blockburger v. United States*, 284 U.S. 299 (1932).[6] As a resolution to the situation, and with the prosecutor's acquiescence, the trial court dismissed each of the five incest convictions "without prejudice."[7]

With the assumption that the trial court's *Blockburger* analysis was correct,[8] Appellant contends that requiring the jurors to deliberate on the superfluous incest instructions in conjunction with their consideration of the other charges "was clear prejudicial error, palpable or otherwise" and in violation of his "Constitutional protections." He argues that the dismissal of the incest convictions did not remove the prejudicial effect of their presentation to the jury.

We begin our discussion by noting that Appellant never brought to the trial court's attention the instructions that he now claims were erroneously put before the jury. Moreover, Appellant tendered his own proposed instructions

---

[6] Based upon our disposition of the case we need not review the trial court's *Blockburger* analysis. However, we note that in *Johnson v. Commonwealth*, 292 S.W.3d 889 (Ky. 2009), we held that the "crimes of rape and incest each require proof of a fact that the other does not. Specifically, rape requires proof of age, whereas incest does not; incest requires proof of relationship, whereas rape does not. *See* KRS 530.020; KRS 510.040." *Id.* at 897. Appellant argues that *Johnson* is distinguishable for reasons related to the victim's age in this case (under twelve); however, again, we need not delve into the details of that claim.

[7] Designation of the dismissal as being "without prejudice" seems to imply that Appellant at a later time may be tried again on the incest charges. However, the Appellant having already been tried and convicted on those charges by a jury, and the charges then having been dismissed post-conviction by the trial court on double jeopardy grounds, which was tantamount to an acquittal of the charges, and the Commonwealth having not sought to challenge the dismissal, and indeed agreeing to it, we are aware of no authority which would permit Appellant to again be tried, and again placed in jeopardy, on those same charges over his objection. *See generally Commonwealth v. Gilliam*, 425 S.W.3d 918 (Ky. App. 2014) (summarizing double jeopardy principles in the situation of an acquittal by the trial court).

[8] The trial court's analysis of the double jeopardy question is not before us, and we decline to address here.

14

on the incest charges. RCr 9.54(2) provides that "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection."

In *Martin v. Commonwealth*, 409 S.W.3d 340 (Ky. 2013) we clarified that "RCr 9.54 imposes upon the party the duty to inform the trial court of its preferences regarding 'the giving or the failure to give' a specific jury instruction." *Id.* at 346. In summarizing the consequences of a party's failure to inform the trial court with his preference we stated "when the allegation of instructional error is that a particular instruction should have been given but was not or that it should not have been given but was given, RCr 9.54 *operates as a bar to appellate review* unless the issue was fairly and adequately presented to the trial court for its initial consideration." *Id.* (emphasis added).

Appellant's argument falls squarely within the bar imposed by RCr 9.54, as explained in *Martin*, and therefore, it will not be reviewed as possible error. Further, because Appellant himself tendered incest instructions, his argument is further barred under the invited error doctrine. *Webster v. Commonwealth*, 438 S.W.3d 321, 324 (Ky. 2014) (when a party tenders an instruction that is substantially similar to those ultimately given by the trial judge the issue of the giving of the instruction is not eligible for appellate review); *see also Thornton v. Commonwealth*, 421 S.W.3d 372, 376 (Ky. 2013).

15

## VI. CLOSING ARGUMENTS BY THE PROSECUTOR

Appellant's final argument is that error occurred as a result of statements made by the prosecutor during closing arguments. Appellant acknowledges that this issue is not preserved but requests palpable error review pursuant to RCr 10.26.

More specifically Appellant identifies the following statements as compelling reversal:

> [T]his comes down to two things, [Sharon's] testimony and Dr. Kelly Kries' testimony . . . that's what's really important, those two people . . . . [Dr. Kries' testimony was] *important because she's an expert*. She's not like me and you. *She knows what she's looking at when she does a forensic exam.*"

The essence of Appellant's argument is that the prosecutor engaged in misconduct because he referred to Dr. Kries as an "expert," even though she was not formally called as an expert witness, had not been formally qualified as such or declared so by the trial judge, and was proffered as Sharon's "treating physician" rather than an expert forensic examiner.

As noted above, Appellant concedes that this issue was not preserved by adequate contemporaneous objection, and so our review is pursuant to the manifest injustice standard contained in RCr 10.26. In the circumstance of alleged prosecutorial misconduct in closing arguments, we consider whether the Commonwealth's statements are supported by facts in the record and whether the allegedly improper statements appeared to rebut arguments raised by defense counsel. *Young v. Commonwealth*, 25 S.W.3d 66, 74 (Ky. 2000). Further, we must always consider the prosecutor's closing arguments "as a

whole" and keep in mind the wide latitude we allow parties during closing arguments. *Id.* at 75.

Here we find no error at all, and so perforce there was no palpable error. While it is true that in this case Dr. Kries was not *formally* qualified as an expert witness, she undoubtedly possessed the necessary qualifications to meet that standard under KRE 702 if that route had been pursued. For example, the record reflects that Kr. Kries is a pediatric physician with fourteen years in the field, and that she has treated approximately 50,000 children during her medical career, including many child sexual abuse victims. Thus the prosecutor's referral to the witness as an "expert" was not incorrect, at least in the colloquial sense for purposes of making his argument to the jury. In summary, we hold that the prosecutor's reference to Dr. Kries as an "expert" fell within the wide latitude afforded to attorneys in making their closing arguments to the jury.

## VII. CONCLUSION

For the foregoing reasons, the judgment of the Hart Circuit Court is affirmed.

All sitting. Minton, C.J., Abramson, Barber, Cunningham, Noble, and Venters, JJ., concur. Keller, J., concurs in result only.

17

COUNSEL FOR APPELLANT:

Jason Curtis Rapp
Franklin & Rapp


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Leilani K.M. Martin
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General