RENDERED:  JANUARY 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1581-MR

PRESTON R. WRIGHT　　　　　　　　　　　　　　　　APPELLANT


APPEAL FROM BARREN CIRCUIT COURT
v.　　　　　　HONORABLE JOHN T. ALEXANDER, JUDGE
ACTION NO. 16-CR-00192


COMMONWEALTH OF KENTUCKY　　　　　　　　　　　APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; DIXON AND GOODWINE, JUDGES.

DIXON, JUDGE:  Preston R. Wright appeals from the order denying his RCr[1]

11.42 motion to vacate, set aside, or correct his judgment of guilt and sentence,

entered on September 24, 2020, by the Barren Circuit Court.  Following a careful

review of the record, briefs, and law, we affirm.

---

[1] Kentucky Rules of Criminal Procedure.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Direct appeal of this case was affirmed by the Supreme Court of Kentucky in *Wright v. Commonwealth*, 590 S.W.3d 255 (Ky. 2019). "Wright was charged with one count of sodomizing his then-girlfriend's five-year-old daughter Tammy.[2] Because the issues raised on appeal are limited to the circumstances surrounding . . . the jury's deliberations, we will not discuss the details of the crime itself." *Id*. at 257 (footnote renumbered from original). We adopt those facts:

> On the second day of trial the jury began its deliberations at about one o'clock. An hour later the jury requested, and was permitted, to see the video of Tammy's testimony again. The jury went back in to deliberate at 2:38 PM.
>
> At 3 PM the foreperson told the court that several jurors were "not comfortable making a decision yea or nay, guilty or not guilty, based on the evidence." The judge admitted he had never encountered that situation before and wanted to talk to counsel about their preferred course of action. The judge suggested reading through the instructions again, telling the jury to think about those instructions, and to make it clear that each individual juror had a duty to either vote guilty or not guilty; that they could not abstain from voting altogether. The Commonwealth agreed, but the defense argued that the only thing they could do was to bring the jury out, read the *Allen*[3] charge to them and send them back in, or declare a mistrial. The judge replied that an *Allen* charge is read to a deadlocked jury, and that was not what they had. They simply had jurors that were unwilling to vote

---

[2] This pseudonym is used to protect the child's privacy.

[3] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

either way.  The judge further noted that juries come out with questions all the time about a myriad of things, and the court has options beyond reading them an *Allen* charge.

So, at 3:08 PM the court explained to the jury that they each had an individual obligation to vote guilty or not guilty based on the instructions and the evidence.  He told them that if they reached a point where everyone voted and it was not unanimous, then they could let the court know and they would deal with that issue.  He then sent them back in to deliberate.

At 3:24 PM the foreperson reported that everyone had voted, but they were now deadlocked.  The judge read them the *Allen* charge verbatim and sent them back in to deliberate at 3:26 PM.

At 3:46 PM the foreperson informed the court that they had another issue.  Anticipating that they were still deadlocked, the court asked counsel what they wanted to do if that was indeed the case.  The Commonwealth suggested asking the foreperson if he thought further deliberations would be helpful, while the defense suggested declaring a mistrial.  The court proposed telling the foreperson the court's only two options were to either read the *Allen* charge again and continue deliberations or declare a mistrial and get the foreperson's opinion.  The defense agreed.

The court therefore asked the foreperson if he thought there would be any utility in having them deliberate further.  The foreperson said that if the court would have asked him that an hour ago, he would have said no.  But a few jurors had changed their opinion, while a couple of jurors were holding firm.  The trial court then brought the jury out and explained that he was not trying to "twist their arm," but that he was required to read the *Allen* charge again because they were still deadlocked.  He read it again verbatim and said "I'll ask

-3-

you to return to the jury room and continue your deliberations. I'm not asking for a specific amount of time. If and when you come to a decision one way or the other or convince yourselves you're at an intractable spot, then just let us know and we'll go from there, okay?" The jury was sent back in to deliberate at 3:57 PM.

At 4:58 PM, the foreperson came out and asked if the judge could provide a definition of "reasonable doubt." The judge explained that he could not, that what constitutes reasonable doubt is a judgment call for each individual juror. The foreperson went back to deliver the court's answer at 5 PM.

At 5:11 PM, after a total of four hours of deliberation, the jury came back with a guilty verdict.

*Id*. at 258-59 (footnote omitted).

After the Supreme Court affirmed, Wright, *pro se*, moved the trial court to vacate the judgment and sentence pursuant to RCr 11.42. The Commonwealth responded, and the trial court denied the motion without holding an evidentiary hearing. This appeal followed.

## STANDARD OF REVIEW

As established in *Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12 (Ky. 2002):

[t]he *Strickland* standard sets forth a two-prong test for ineffective assistance of counsel:

[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors

-4-

so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984).

To show prejudice, the

defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is the probability sufficient to undermine the confidence in the outcome.

*Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 695.

Both *Strickland* prongs must be met before relief may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In the instant case, we need not determine whether Wright's counsel's performance was adequate on the issue raised on this appeal because Wright fails to demonstrate prejudice resulting from counsel's alleged deficient performance.

To establish prejudice, a movant must show a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. In short, one must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S. Ct. at 2064. Fairness is measured in terms of reliability. "The likelihood of a different result must be **substantial**, not just conceivable." *Commonwealth v. Pridham*, 394 S.W.3d 867, 876 (Ky. 2012) (emphasis added) (quoting *Harrington v. Ritcher*, 562 U.S. 86, 100, 131 S. Ct. 770, 791, 178 L. Ed. 2d 624 (2011), citing *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067)).

The standard for evaluating claims of ineffective appellate counsel is the same as the "deficient-performance plus prejudice" standard applied to claims of ineffective trial counsel in *Strickland*. *Hollon v. Commonwealth*, 334 S.W.3d 431, 436 (Ky. 2010), *as modified on denial of reh'g* (Apr. 21, 2011).

> Respondent [defendant] must first show that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [defendant] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a **reasonable probability** that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

-6-

*Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (emphasis added).

## LEGAL ANALYSIS

On appeal herein, Wright alleges the trial court erred in denying his RCr 11.42 motion because: (1) trial counsel failed to object to the court's improper communication with the jury foreperson outside the presence of the entire jury, and (2) appellate counsel failed to raise the issue of that improper communication on appeal. We will address each argument, in turn.

Wright first argues his trial counsel's failure to object to the court's improper communication with the jury foreperson outside the presence of the entire jury constituted ineffective assistance of counsel. RCr 9.74 mandates:

> No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) **and the entire jury**, and in the presence of or after reasonable notice to counsel for the parties.

(Emphasis added.)

On direct appeal, the Supreme Court noted "on at least three separate occasions the trial court conversed with the foreperson out of the presence of the rest of the jury. These actions, though done in good faith, were a clear violation of RCr 9.74[.]" *Wright*, 590 S.W.3d at 265. It further held "this error was waived by

-7-

defense counsel's lack of objection to said discussions" but "reiterate[d] that our trial courts are bound to follow RCr 9.74 and its corresponding case law." *Id.*

For the appeal herein, Wright asserts the trial court's communication with the foreperson outside the presence of the entire jury intentionally or inadvertently coerced the verdict in this case. Although the Supreme Court found that issue to be waived, we may review whether counsel was ineffective in waiving the issue. *Prescott v. Commonwealth*, 572 S.W.3d 913, 922 (Ky. App. 2019) ("[A]n adverse ruling from the Court on direct appeal does not preclude the same claim of error from being considered again as ineffective assistance of counsel.").

It is well established:

> When analyzing whether a trial court has coerced a jury verdict, this Court has explained that the ultimate test of coercion is whether the instruction **actually forces** an agreement on a verdict or whether it merely forces deliberation which results in an agreement. We analyze the **totality** of the circumstances. The time lapse between the alleged coercive comment and the verdict may be relevant as part of the totality of circumstances, though not decisive. [S]tatements which merely impress upon the jury the propriety and importance of coming to an agreement do not rise to the level of reversible error. At the same time, however, it must be remembered that the words and acts of a presiding judge have great weight with juries, and for that reason we have often written that he should at all times be cautious in what he says or does in the presence of the jury.

*Bell v. Commonwealth*, 245 S.W.3d 738, 742-43 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008) (emphasis added) (internal quotation marks and citations omitted).

When the Supreme Court considered whether the trial court's *Allen* charges to the entire jury were coercive, it held:

> **There is nothing in either of these statements, or the circumstances surrounding their delivery**, that convinces this Court that the jury was **forced** to reach a verdict. **The trial judge specifically stated no one was trying to twist the jury's arm**, or even that they should deliberate for a specific period of time. **Further, the jury deliberated for a total of four hours, which cannot be considered a coercive factor**. This is an instance where the *Allen* instructions were given merely to encourage continued deliberations. **We therefore find no error**.

*Wright*, 590 S.W.3d at 264 (emphasis added).

The court's statements to the foreperson outside the presence of the entire jury were made in a like manner and consisted of similar language. Portions of the exchanges between the court and foreperson were lifted from their context in Wright's briefs to make the trial court appear coercive. Examination of the full exchanges clearly shows no coercion. Further, the court brought in and addressed the entire jury immediately after having its exchanges with the foreperson, which in this case mitigated any potentially harmful effects of the improper communication. Our review reveals only one instance – the last exchange between

the court and the foreperson – when the court did not also address the entire jury. On that occasion, the foreperson asked the court if it could define the phrase "reasonable doubt," to which the court responded it could not. Additionally, more than an hour passed between when the jury was sent back for deliberations after the second *Allen* charge and when the foreperson emerged to request the court define "reasonable doubt." Our review of the exchanges that violated RCr 9.74 reveals no intentional or inadvertent coercion. Accordingly, Wright has not demonstrated prejudice required to prevail on a claim of ineffective assistance of trial counsel.

Wright's second argument concerns ineffective assistance of appellate counsel. He claims his appellate counsel was ineffective for failing to raise the issue of improper jury communication on direct appeal. For the reasons discussed herein, the improper communication between the court and the jury foreperson did not constitute reversible error. Thus, appellate counsel's failure to include the issue in the direct appeal brief did not rise to the level of ineffective assistance of appellate counsel.[4]

---

[4] The Supreme Court of the United States has held:

> appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal . . . it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.

## CONCLUSION

Therefore, and for the foregoing reasons, the order upholding Wright's judgment and sentence entered by the Barren Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrea Reed
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

---

*Smith*, 528 U.S. at 288, 120 S. Ct. at 765.